## Staunton.

### COCHRAN V. THE LONDON ASSURANCE CORPORATION.

#### SEPTEMBER 24, 1896.

1. FIRE INSURANCE—*Case at Bar—Extension of Time for Suit—Inferences—Demurrer to Evidence—Motion to Set Aside Verdict.*—The evidence of the plaintiff in this case, which is all that can be considered on the defendant's demurrer to the evidence, shows that the insurance company granted the plaintiff an extension of three months, after the time his right to sue would be barred by the terms of the policy, within which to institute an action; that the plaintiff accepted the benefit of the extension, and relied on it; and that the action was brought within the extended period. Though there was evidence upon which the jury might have inferred that the benefit of the extension was not accepted, yet, upon a demurrer to the evidence, or a motion to set aside the verdict of the jury, the court is bound to that interpretation of the facts, and that conclusion from the evidence, which the jury have sanctioned by their verdict.

2. FIRE INSURANCE—*Extension of Time for Suit—Subsequent Revocation or Qualification.*—After an insurance company has granted an extension of time within which an action may be instituted on one of its policies it cannot withdraw it, nor attach conditions to it, without the consent of the party to whom the extension is granted.

Error to a judgment of the Circuit Court of Rockingham county, rendered April 18, 1895, in an action of *assumpsit,* wherein the plaintiff in error was the plaintiff, and the defendant in error was the defendant.

*Reversed.*

The opinion states the case.

*Strayer & Liggett* and *Geo. M. Cochran,* for the plaintiff in error.

*Sipe & Harris,* for the defendant in error.

CARDWELL, J., delivered the opinion of the court.

This is a writ of error to a judgment of the Circuit Court of Rockingham county in favor of the defendant, upon a demurrer to evidence, and the facts and circumstances out of which the suit arose may be stated as follows:

The plaintiff in error owned a farm in Rockingham county, with a dwelling house thereon, which he agreed to sell to H. M. Bell in 1890 for $11,280, with the privilege to Bell to turn over his purchase to the Grottoes Company, upon its paying $4,000 in cash, and the residue on time. The property was turned over by Bell to The Grottoes Company upon the terms named. In addition to the specific security of a vendor's lien reserved on the property, Cochran required that the dwelling should be insured for his benefit, which was done by Bell and the Grottoes Company in the London Assurance Corporation, the defendant in error; and the policy for $2,000 contained the provision that the loss, if any, was to be payable to Cochran, as his interest might appear. On the 3rd day of February, 1893, at which time there was due to Cochran eight or nine thousand dollars of the purchase money, the dwelling insured was entirely destroyed by fire. Cochran promptly notified the defendant company of the fire, and of his claim of indemnity under the policy. The defendant company, with promptness also, sent its adjuster to examine the premises, see the parties interested, and ascertain the character and extent of Cochran's interest in the insurance money. This adjuster, J. Tyler Jackson, visited the premises on February 20, 1893, saw Mr. Rumple, the President of The Grottoes Company, and tried to get him to sign the proofs of loss, but he declined to do so until Bell had signed. Jackson then went to the house of Cochran, and spent the night of February 21st, and on the 22d of February, 1893, obtained the signature of Bell to the proofs of loss, and sent them again to Rumple for his signature, with the request

that he sign and return them as soon as he could.  Rumple re-
tained the proofs of loss, and on March 9, 1893, wrote Jackson
that he had been too busy to take up the matter, but would do
so early next week.  This he did not do, and Jackson went
again to see him in March, but on this occasion Rumple de-
clined to sign the proofs, on the ground that the company had
never purchased the property, and therefore had no interest
in the insurance.  Thus the matter stood, with the exception
of several interviews between Jackson and Cochran, till Jan-
uary, 1894, and in the meantime the Grottoes Company went·
into the hands of receivers of the court.   January 19, 1894,
Cochran went to the office of Jackson, in Charlottesville,
and suggested to him that something must be done, as the
year would soon be out, and asked Jackson to extend the
12th section of the policy; but Jackson replied that he could
not do so, as he had no authority to alter the printed or writ-
ten conditions of the policy.  Whereupon Cochran requested
Jackson to get the authority from the defendant company
to do so, and took the proofs of loss, the same that Bell had
signed in the first instance, saying that he would try·to get
the receivers of the Grottoes Company to sign, and promised
Jackson to return the proofs, whether the signatures of the
receivers were obtained or not.   Jackson immediately (Jan-
uary 19, 1894,) wrote to the defendant company relating
this interview with Cochran, and suggesting that the 12th
clause of the policy be extended.   To this letter of Jackson
the following reply was received:                 .

"NEW YORK, January 22, 1894.
"J. TYLER JACKSON, ESQ., Adjuster, Charlottesville, Va.

" Dear Sir,—" Claim—H. M. Bell and The Grottoes Com-
pany.

" We have yours of the 19th.  In the circumstance we con-
sider that so far at least as Bell and the Grottoes Company
are concerned, they ought not to expect any waiver of our

right in respect of the year limit, and we are not prepared to grant the same to them, but Colonel Cochran's position is different, it being the other parties who have delayed settlement of matters by the ridiculous position they have taken up, and consequently, as far as Colonel Cochran is concerned, we are willing to extend the time within which to bring suit for three months from 3rd proximo, in the hopes that some arrangement towards a settlement may be come to before the expiration of that time.

" Yours truly,

" C. L. CASE, *Manager.*

J. F. J."

On the next day, January 23, Jackson enclosed a copy of the letter from Case, Manager, with a letter of his own to Cochran, and this letter of Jackson's is as follows:

" CHARLOTTESVILLE, VA., Jan'y 23, 1894.

" 1½ P. M.

" Col. J. C. Cochran, Folly Mills, Va.

·    " My Dear Sir,—Above is exact copy of letter just received from London Assurance Corporation, and is, I think, extremely liberal.   It also shows that you have to deal with a first-class, straightforward company, which seems anxious only for a settlement.   They, like you, appear fretted at the way in which the Grottoes Company have acted.   They are, however, wrong as regards Major Bell, and their coupling his name with the Grottoes Company must be an oversight of clerk who wrote the letter, as they know that he has signed the papers.   Please give proofs of loss your early attention, and return them to me as soon as you find you can do nothing with them, or can get receivers to sign them.

" Very truly yours, &c.,

" J. TYLER JACKSON, Adjuster."

January 30, 1894, Cochran wrote Jackson the following letter:

"Arista Hoge.                              W. B. McChesney.

"*In return.*                    Received February 2, 1894.

"Office of  *London Assurance Corporation.*

"Hoge & McChesney, Atlas Insurance Agency.

"STAUNTON, VA., January 30, 1894.

"Dear Sir,—I return proof of loss signed by Bell and Receivers of the Grottoes Company.

"The waiver of limit as to myself will not be satisfactory to the other parties.

"Please send before Friday evening to Hoge & McChesney, Staunton, Va., or telegraph the same at my expense, a waiver of section twelve of policy for a reasonable time so the company can adjust loss, as I do not want to docket a suit, as the company does not seem to be at any fault.

"Yours respectfully,

"J. C. COCHRAN."

The Receivers instead of signing the proofs of loss, as instructed, attached thereto the following:

"Referring to the foregoing affidavit of H. M. Bell of February 22, 1893, touching the loss on the buildings insured by the policy in said affidavit mentioned and described, the undersigned, J. W. Rumple and J. W. Blackburn, Receivers of the Grottoes Company, hereby declare that, the best of their information and belief, the facts and circumstances relating to the loss referred to in said affidavit; and they hereby consent and agree that the loss on said property as it has been, or may be adjusted, shall be paid by the insurance corporation, the said London Assurance Corporation of London, England, to James C. Cochran, payment to whom by

said Insurance Corporation shall be a sufficient acquittance for the amount of said loss so far as the Grottoes Company is concerned. But it is distinctly understood and provided that nothing herein stated or agreed to is in anywise to affect the relative and respective rights of said Cochran, H. M. Bell and the Grottoes Company amongst themselves in respect to the property insured or to the insurance money.

"Given under our hands this 30th day of January, 1894.

"J. W. RUMPLE,
"JOHN W. BLACKBURN,
"Receivers of the Grottoes Company.

"State of Virginia, county of Augusta, to-wit:

"Subscribed and sworn to by J. W. Rumple, one of the Receivers of the Grottoes Company, this 30th day of January, in the year 1893, before me, the undersigned.

"FITZHUGH ELDER, Notary Public."

Upon the receipt of the letter of Cochran enclosing the proofs of loss on January 30, 1894, Jackson wrote to Cochran a letter the substance of which is that he, as adjuster, had much less right than an agent in regard to the conditions of a policy; that an agent has no authority whatever to waive any of the printed conditions, or even his own written conditions after they have been written, forwarded to the company, and accepted; "therefore, that, as an adjuster, I have no authority whatever to waive any of the conditions (printed or otherwise) of a policy of the London Assurance Corporation, my only connection (and all that ever existed) with them being that of an adjuster." After quoting from the manuscript addition to the printed proofs of loss signed by the Receivers of the Grottoes Company, that part which states the conditions upon which the Receivers signed, Jackson then says: "The last five words (*or to the insurance*

*money*) ought not to be there, because they, just ahead of that, release the company from all claims on account of the loss, and in the last five words upset it by claiming again their right to an interest in the money." He also says: "After carefully considering your letter, all that I can do is to offer you sixteen hundred and fifty ($1,650) dollars in settlement of the loss," &c. To the letter is added as " N. B.": " Of course, all offers of extension, &c., to you are withdrawn and null as soon as suit is docketed or instituted "—signing the letter as " Adjuster."

On February 2, 1894, the day before the twelve month's limit stipulated for in the twelfth section of the policy expired, Cochran instituted suit on the policy in the Circuit Court of Rockingham county, to which the defendant company pleaded in abatement the provision in the policy which gave the company sixty days within which to pay the loss from the time that the proofs of loss were received at the company's office in New York, and that sixty days had not elapsed since the proofs of loss were received by the company; whereupon the plaintiff, Cochran, suffered a non-suit, and after sixty days from the final delivery of the proofs of loss to Jackson, and on the 23d of April, 1894, brought this action, to which the defendant company filed its special plea that the action had not been brought within twelve months from the date of the loss, February 3, 1893, as stipulated for in the twelfth section of the policy, and also pleaded the general issue. Upon the issues joined on the special plea and *non-assumpsit*, a trial was had which resulted in a verdict for the plaintiff for the amount of the policy, $2,000, but on motion of the defendant company the Circuit Court set it aside and awarded a new trial. At a second trial, after the evidence of both plaintiff and defendant had been submitted to the jury, the defendant company demurred to the plaintiff's evidence, in which the plaintiff joined, and the jury found a verdict for the plaintiff for $2,000, with interest from April

2, 1894, subject to the decision of the court on the demurrer to evidence. The court sustained the demurrer to the evidence, and gave judgment for the defendant company with costs.

From what has been stated, it will be observed that section twelve of the policy sued on stipulates that, unless suit is brought on the policy within twelve months next after the loss occurs, the lapse of time shall be taken and deemed as conclusive evidence against the validity of the claim, any statute of limitations to the contrary notwithstanding; and much of the argument of counsel has been spent in the discussion of the rights of the parties to contract for a limitation on the rights of the insured to bring his action to recover the loss, in contravention of the statute of limitations, and whether or not the twelve month's limitation began to run from the date of the fire February 3, 1893, or from the date that the cause of action accrued, that is, from the expiration of the sixty days next after the proofs of loss were completed and received by the defendant company. But in the view we take of the case, if these be open questions in Virginia, they are not necessary to be considered here; nor is it necessary to review the several bills of exceptions taken by the plaintiff in error at the two trials. A decision of the case turns, we think, upon whether or not the extension granted by the defendant company to the plaintiff in error, as contained in the letter of Case, Manager, of January 22, 1894, and communicated to plaintiff in error by Jackson, adjuster, January 23, 1894, was in force when the suit was brought. According to the plain meaning of the language employed in the letter of January 22, the plaintiff in error was to have from February 3rd to May 3rd, 1894, "within which to bring suit." It is contended, however, for the defendant company, that Cochran did not accept the extension, as shown by his instituting his suit of February 2, 1894, which was withdrawn, his letter to Jackson of Jan-

uary 30, 1894, and the institution of the present suit on April 23, 1894; or, that if he accepted the extension, it was given on conditions which he violated, and thereby forfeited his right to it.   The evidence of the plaintiff in error consists of the letters and papers herein copied or referred to, his own testimony, and that of other witnesses as to the value of the building destroyed.   The only witness examined for the defendant company was Jackson, its adjuster, and, as his testimony is in conflict with the plaintiff's, it is, of course, excluded by the demurrer to evidence.

Plaintiff in error testified that, when he received the letter giving him the extension of ninety days, he filed it away, and rested easy, but afterwards when he furnished the proofs of loss, and the Insurance Company refused to pay, he determined to bring the suit of February 2, 1894, and wrote Jackson the letter of January 30, 1894.   He further states positively that he accepted the ninety days' extension, and relied on it.   There is nothing inconsistent with this statement, unless it be the letter to Jackson of January 30, 1894, and the institution of the suit of February 2, 1894.   In the letter he does not say that the extension was not satisfactory to him, but that it would not be satisfactory to the other parties.

A person is presumed to accept that which is beneficial to him, and it is certain that an extension of time within which to institute the suit was, under the circumstances surrounding the plaintiff in error, a benefit to him.   It is true that, in the letter of January 30, he asked for a waiver of the 12th section of the policy, and it may be that the jury would have been justified in inferring from that letter a rejection of the extension of time unless it was made to embrace the Grottoes Company and H. M. Bell; but it may also be fairly inferred from that letter that, although the ninety days' extension was satisfactory to Cochran, and he relied upon it, a complete waiver of the 12th section was asked for, and

that the first suit was brought in order to avoid further trouble between himself and the Grottoes Company. It was the Grottoes Company that had, by refusing to sign the proofs of loss, brought about the difficulties that existed. If a condition of facts is such that the jury may deduce from them more than one inference or conclusion, the court, upon a motion to set aside their verdict, or upon a demurrer to the evidence, has no such discretion, but is bound down to that interpretation of the facts, and is constrained to adopt that conclusion from the evidence, which the jury have sanctioned by their verdict.

We do not see enough in the acts of Cochran, or in his letter of January 30, 1894, to justify the conclusion that he did not accept the benefit of the ninety days' extension, and rely on it. This being so, the ninety days' extension had the effect of making the period within which this suit might be brought fifteen months from the date of the loss, instead of twelve, as written in the policy.

How then does the case stand? As has already been pointed out, the letter of Case, Manager, of January 22, 1894, after saying "*under the circumstances* we consider that so far as Bell and the Grottoes Company are concerned, they ought not to expect any waiver," &c., and, after attributing all causes of delay to these parties, concludes: "And consequently, as far as *Col. Cochran is concerned,* we are willing to extend the time within which to bring suit for three months from the 3rd proximo, in the hopes that some arrangement towards a settlement may be come to before the expiration of that time." This is communicated at once by Jackson, without a suggestion of a qualification or a condition, and with the request that he return the proofs of loss, whether the signatures of the receivers of the Grottoes Company are gotten or not. The proofs were sent on January 30, 1894, with the signatures of the receivers attached at the foot of the paper by which they gave ample and complete authority.

to the defendant company to pay Cochran the insurance money, but because they attach some conditions, which by no fair implication could affect the defendant company, being only a reservation as between Cochran, Bell, and the Grottoes Company, Jackson, who all through the negotiations protests that he was not an agent of the defendant company, and, as adjuster, had no authority to waive any of the conditions, or to grant any extension of the limit prescribed in the policy, for the first time undertakes to annex conditions to the extension granted by the defendant company itself, and communicated to Cochran a week before. The letter itself, to which he attaches the conditions, the breach of which by Cochran is to forfeit the benefit of the extension, repeats that he, Jackson, has no authority beyond that of an adjuster. The defendant company itself could not now withdraw the extension without the consent of Cochran, nor attach conditions to it after it was granted; but, even if Jackson had the right to attach the conditions, the conditions are so inconsistent with the agreement to give the extension, that they should not be considered. Cochran has an extension of ninety days from February 3, 1894, granted by the defendant company, and within which time he might bring his suit, yet a week after it is communicated to him, Jackson, the adjuster, attaches a condition that if suit is brought at any time, the extension is to be considered as withdrawn and void. If the ninety days' extension was not to be regarded as valid, then there was in fact not one moment of time within which Cochran could have brought his action, and that, too, in face of the facts that the defendant company never questioned its liability for the loss, and never questioned that Cochran was entitled to the whole insurance money.

Doubtless the Circuit Court sustained the demurrer to evidence on the ground that the ninety days' extension was not in force when this suit was brought. In this view we

are unable to concur, and its judgment will therefore be reversed and annulled, and this court, proceeding to enter the judgment that the Circuit Court should have entered, will overrule the demurrer to the evidence of the plaintiff in error, and give judgment in his favor against the defendant in error.

*Reversed.*