# Wytheville

## CITY OF PORTSMOUTH V. ELIZABETH MADREY.

### June 10, 1937.

Present, Holt, Hudgins, Gregory, Eggleston and
Spratley, JJ.

The opinion states the case.

*White & Guy*, for the plaintiff in error.

*W. H. Starkey, John C. Davis* and *Willcox, Cooke & Willcox*, for the defendant in error.

HOLT, J., delivered the opinion of the court.

The city of Portsmouth, jointly with the county of Norfolk, owns and operates a ferry and carries passengers and freight across Elizabeth river between the cities of Portsmouth and Norfolk. On one of its boats, when docked at Norfolk, Elizabeth Madrey fell and was hurt. Compensation in damages was sought, and she has recovered a judgment for $800.

She fell as she came aboard. This is her account of her accident:

"Well, as I was on the dock I saw that the ferry was not docked even level with it, I saw that, and when I stepped this foot over on the ferry; it give a dip and as it give a dip it went up and I fell right over. I didn't fall straight down. I fell right over side on this knee."

The bridge over which passengers come aboard is movable, is hinged on its inshore end, and when in use is lowered to the level of the ferry boat itself. It is raised and lowered by two chains from above operated on shore, and when in position for traffic it is attached to the boat itself by two other chains hooked to deck bolts which pass over and are tightened on a drum by a ratchet wheel on the bridge. In the center of this bridge is a roadway supported on each side by arch trusses. To its right and left are walkways supported in like manner. When the boat is properly docked the roadbed and walkways of the bridge and the deck of the boat are practically on a level and this level remains reasonably constant though the boat itself be raised or lowered by water movements or by other causes. Absolute and constant level is not possible but it should always be reasonably so.

If this boat was properly docked, and the city claims that it was, then there is no liability. If it was negligently docked, as plaintiff contends, and if that negligence was the proximate cause of her injury, it is liable, and that liability as found should be sustained unless there is some harmful procedural error apparent on the record.

The city maintains, both by plea and demurrer, that no adequate notice of the plaintiff's claim has been served upon it.

By statute, Acts of the Assembly, 1918, ch. 20, p. 20, it is provided:

"No action shall be brought against the City of Portsmouth for damages for an injury to any person or property alleged to have been sustained by reason of the negligence of the City, or of any officer, agent, or employee thereof, unless a written statement, verified by the oath of the claimant, his agent, or attorney, of the nature of the claim and of the time and place at which the injury is alleged to have occurred, or been received, shall have been filed with the City Manager

of said city within thirty days after the injury occurred; * * *."

This is the notice given:

"This is to inform you that Mrs. C. H. Madrey, of 1715 Charleston Avenue, Portsmouth, Virginia, the undersigned, was injured on the 22nd day of August, 1935, between the hours of 5:00 and 6:00 p. m. that day, when she was jerked in such a manner as to cause her to be violently thrown while in the act of boarding ferry at the Norfolk side of the river, which was negligently docked; as a result of which she was seriously injured."

The time is stated and the place is stated, but it is said that the nature of the accident is not, nor the manner in which it came about.

██ This notice is mandatory, but it need not be a bill of particulars.

A like notice came under review in *Jackson* v. *Richmond*, 152 Va. 74, 146 S. E. 303, 307. This court there said:

██ "One sound rule formulated from the precedents and based upon the particular statute applicable is that the requirement of such notices is mandatory, and, under the Virginia statute, the action cannot be 'maintained' unless the notice so required is given within the time specified; but nevertheless, while the giving of a sufficient and timely notice is mandatory, there is nothing in the Virginia statute prescribing the precise form or exact contents of such a notice. It is therefore sufficient in form if it serves its purpose to give the city authorities information of 'the nature of the claim and of the time and place' of the injury—this so as to enable them to investigate the circumstances and aid in the defense of the city against improper claims. A substantial compliance with the statute is all that is necessary. 19 R. C. L. 1044; *Small* v. *Seattle*, 139 Wash. 559, 247 P. 925, 48 A. L. R. 128."

██ Plaintiff contended and she still contends that at a given date and hour she was violently thrown while in the act of boarding the ferry at the Norfolk side of the river and that this ferry boat was improperly docked. The notice of this action given to the city gave to it all essential information and is sufficient. As a matter of fact the city knew through

its agents, acting within the scope of their authority, everything which it now knows and which it could know relative to this accident and its causes.

There was a notice of motion for judgment, an amended notice and a second amended notice. To each of them a demurrer was interposed. The last sets out the insufficiency of the notice. We have seen that it was sufficient. It is also said that the boat was not docked in a manner which would prevent its rising and falling with movements of the water. The notice itself in part reads:

"At said time, it became and was your duty to have said ferryboat docked or moored in such a manner that I could safely board the same, and in such a manner that the deck of said boat would be on the level with the dock or wharf that said boat could be held securely against said wharf, and in such a manner that the boat would not sink down or descend to a lower level when vehicles which you permitted to enter the said boat at the same time I was entering the same rolled from the dock or wharf onto said boat, and so that said boat would not rise and fall with the movement of the water.

"Notwithstanding your duties in the premises, but in violation thereof you negligently and carelessly failed to so moor or tie your said ferryboat, but caused and permitted the same to be improperly, insecurely and unsafely docked or moored, and so that the deck of the said ferryboat was a material distance lower than the dock or wharf and so that said boat could move a material distance from said dock or wharf and so that said boat would descend or dip to a great distance below said dock or wharf when automobiles and other vehicles which you permitted to board from the dock or wharf onto the deck of said boat, and so that said boat would rise and fall with the movement of the water."

The motion itself is not a model of clearness and certainly the city could not still the troubled waters of Elizabeth River nor prevent its boats from moving with them. That claim, however, was not insisted upon at the hearing as a basis for recovery. The substance of what was insisted upon was that the boat was improperly docked. If that be true, and if the

accident suffered was one of its proximate results, plaintiff has stated a case.

■ "The procedure by motion is intended to give the plaintiff a simpler, cheaper and more expeditious mode of procedure than is provided by a regular common-law action, and, for this reason, it has been uniformly viewed with more leniency, and a greater laxity has been allowed in the pleadings than in regular actions. *Whitley* v. *Booker Brick Co.,* 113 Va. 434, 74 S. E. 160." *Chandler* v. *Baltimore, etc., Ry. Co.,* 125 Va. 63, 99 S. E. 794, 795.

■ "The rule governing notices is, that they are presumed to be the acts of parties, and not of lawyers. They are viewed with great indulgence by the courts; and if the terms of the notice be general, the court will construe it favorably, and apply it according to the truth of the case, as far as the notice will admit of such application. If it be such that the defendant cannot mistake the object of the motion, it will be sufficient." *Washington County Board of Supervisors* v. *Dunn,* 27 Gratt. (68 Va.) 608. *Curtis* v. *Peebles,* 161 Va. 780, 172 S. E. 257.

■ More specific information might have been obtained from a bill of particulars, if desired. Defendant did not ask for it. *Wessel* v. *Bargamin,* 137 Va. 701, 120 S. E. 287.

■ Municipalities which operate ferries for profit must, in a proper case, respond in damages as must private owners. They are discharging no public duty.

"A municipality which maintains and operates a ferry, in part for profit, is subject to all the liability of a common carrier." McQuillin, Municipal Corporations (2d Ed.), section 2858. *Davies* v. *Boston,* 190 Mass. 194, 76 N. E. 663; 25 C. J., p. 1082.

Much is said in argument about station facilities. It is not contended that there was anything wrong with them. Plaintiff contends that the boat was not properly tied up to facilities at hand and that her accident did not occur on shore but in the boat itself. It follows that a discussion of the care which they necessitate would be unfruitful.

■ Ferries are, however, common carriers and owe to their passengers that high degree of care which is exacted of other

common carriers. *Chesapeake Ferry Co.* v. *Cummings*, 158 Va. 33, 164 S. E. 281, 82 A. L. R. 790. And this the court in a proper instruction told the jury.

The carrier must use the highest degree of practical care for the safety of its passengers, but it is not an insurer. *Norfolk-Southern R. Co.* v. *Tomlinson*, 116 Va. 153, 81 S. E. 89. Nor is it the guardian of its passengers. *Burr* v. *Virginia Ry. & Power Co.*, 151 Va. 934, 145 S. E. 833.

Is the judgment under review sufficiently supported by credible evidence? We sit as an appellate court and so we might concede that it is against the weight of evidence, but such a concession, when we come to deal with a jury's verdict and with a judgment of confirmation, under rules long settled, is not enough. Presumptions are in its favor and conflicts in the testimony have been settled.

The appliances for proper docking were of approved design and in good order. As the boat comes into its slip, the bridge is lowered and lowered until beams or "toggles" which project from the arched trusses bordering the driveway rest upon the deck. These projected supports help in keeping the bridge and deck upon a common level. They support the bridge which is no longer supported by its chains, but they do not tie the boat to the dock. If slack, the bridge rises and falls with the boat; if taut, it would rise with it but would not fall with it. This is accomplished and complete synchronous movements are obtained only when chains to the right and left of the walkways, passing from deck bolts to drums on the bridge, are properly tightened by a ratchet attachment. When they are properly tightened, there can be no substantial variations in the levels of the bridge and of the deck.

If those chains which lower the bridge are not slackened, and if some unusual weight was put upon the bridge, they would slip their brakes, and if they did not there might be an accident. But no stress could come upon them from boat movements unless the boat was tied up to the bridge.

On the other hand, if the boat was not properly tied to the bridge, through deck bolts as aforesaid, it would be comparatively free to rise and fall with water movements; something which could not happen if it was properly tied up.

Mrs. Madrey herself saw that the boat deck and the bridge deck were not on a level. Her daughter, Mrs. Osterkamp, who was with her, tells what she saw.

"I met my mother at the Union Station at the lower end of Main Street. We walked from the Union Station to the ferry and I bought two tickets in the Ferry office to cross this ferry to Portsmouth. I went ahead of my mother and she came behind me, and when the boat came in I noticed it lacked four inches docking, and just as I stepped off the dock to board the ferry, I felt the ferry flop down, and the next thing I heard my mother scream and I turned around and she was lying on the floor and two men passengers picked her up and led her to the nearest outside seat."

J. S. Crockett is a master mechanic employed by the defendant and was a witness on its behalf. He testified in part as follows:

"Q. Assuming that chain is pulled tight on each side, is it possible, with the boat pushed up against the edge of the bridge, is it possible for the boat to go down without pulling the bridge down with it, if those two chains are tight?

"A. If it went down to any amount there might be just a small fraction there because the length of that chain would permit it to go down maybe an inch or so.

"Q. Not over that?

"A. Not over that I don't think, because due to the length of that chain it would go down a small amount."

R. L. Scott, a quartermaster in charge of this deck, testified in part as follows:

"Q. And when you wind the windless or drums that hold the boat up against the dock, they should be wound tight, shouldn't they?

"A. Yes, sir.

"Q. If they are wound tight they would hold the boat up against the edge of the dock?

"A. Yes, sir.

"Q. And if the proper amount of slack is in the chains that hold the bridge, as the boat and bridge lower and raise the relation between them remains constant, doesn't it?

"A. Yes, sir, they both stay together.

"Q. So, if the boat goes down, one inch or two inches, three inches, or four inches lower than the dock in those movements, it would not be properly moored, would it?

"A. It could not do that.

"Q. If it did do that, it would not be properly moored?

"A. No, sir, that is right it would not be proper.

By the Court:

"Q. Is it possible for it to do that?

"A. No, sir, it can't do that any way on earth.

By Mr. Willcox:

"Q. Why wouldn't it do it?

"A. If the chain is slack it is bound to give.

"Q. If the chain is not slack?

"A. If the chain is tight that holds the bridge up off the boat. Naturally, if the boat goes down the bridge would not follow.

"Q. So, as a matter of fact, if the boat does go down below the level of the dock after she is moored, she is not properly moored, is she?

"A. No, sir."

If the jury believed the testimony of the plaintiff and of her daughter, which is that the deck of the boat was four inches below the bridge when she stepped upon it, and at that moment sank still further, then this boat was not properly moored and this negligence was the proximate cause of the accident.

If this boat was not properly tied up, then it could move as plaintiff has testified that it did move; if it was properly tied up, then such an independent movement was impossible.

 The case is truly a close one in view of the mass of testimony which tends to show that the boat was docked as it should have been docked, but the jury and the judge presiding have each seen fit to accept the plaintiff's version. Her account of what occurred is not intrinsically incredible, so we must accept it.

We find no reversible error in instructions.

For reasons stated, the judgment of the court below should be affirmed, and it is so ordered.

*Affirmed.*