# Richmond

ATLANTIC GREYHOUND CORPORATION v. J. JUDSON SHELTON,
ADM'R OF THE ESTATE OF JOSEPH JUDSON SHELTON,
JR., DECEASED, AND OTHERS.

ROBERT JACKSON, INDIVIDUALLY AND OTHERS v. J. JUDSON
SHELTON, ADM'R OF THE ESTATE OF JOSEPH JUDSON
SHELTON, JR., DECEASED, AND ATLANTIC
GREYHOUND CORPORATION.

January 14, 1946.

Records Nos. 2968, 2968 A.

Present, All the Justices.

The opinion states the case.

*George E. Allen* and *M. Wallace Moncure,* for the plaintiff in error, Atlantic Greyhound Corporation.

*A. G. Robertson, Norman L. Flippen* and *Aubrey R. Bowles, Jr.,* for the defendants in error, J. Judson Shelton, et als.

*Aubrey R. Bowles, Jr.,* and *W. Moncure Gravatt,* for the plaintiffs in error, Robert Jackson, et als.

*George E. Allen, M. Wallace Moncure, A. G. Robertson* and *Norman L. Flippen,* for the defendants in error, J. Judson Shelton, et al.

HUDGINS, J., delivered the opinion of the court.

J. Judson Shelton, administrator of the estate of J. Judson Shelton, Jr., instituted this action, to recover damages for the wrongful death of plaintiff's decedent, against the Atlantic Greyhound Corporation; E. W. Grannis, V. B. Higgins, McDevitt and Street Company, a corporation, and F. N. Thompson, a partnership and joint venture operated under the name of Grannis, Higgins, Thompson and McDevitt Company; Robert Jackson; Highway Equipment and Construction Company and McDevitt and Street Company. The jury returned a verdict for the defendants, Atlantic Greyhound Corporation, Highway Equipment and Construction Company, and McDevitt and Street Company, and for plaintiff against the other named defendants. The trial court set aside the verdict returned for the Atlantic

Greyhound Corporation and entered judgment in the sum of $15,000 for plaintiff against it and all defendants except the Highway Equipment and Construction Company and the McDevitt and Street Company. To this judgment, the Atlantic Greyhound Corporation and the other defendants, except the Highway Equipment and Construction Company and the McDevitt and Street Company, prosecute two separate writs of error. There are two petitions and many briefs for the respective parties, but only one record.

On November 8, 1943, J. Judson Shelton, Jr., was one of fifteen passengers on a Greyhound bus running between Norfolk, via Kenbridge and Blackstone, to Roanoke. The bus collided with the blade of a bulldozer that was being transported from Camp Pickett on a tractor-trailer truck. J. Judson Shelton, Jr., and several other passengers were killed. Others suffered severe injuries.

The admitted or well established facts were that the collision occurred on a dark, rainy evening about 6:30 on Route 40 approximately four miles north of Kenbridge on or near a small culvert. The bus, operated by Victor Blue, was traveling north and the trailer truck, operated by Robert Jackson, was traveling south. The hard surface of the roadway was originally 18 feet wide, but resurfacing from time to time had extended the width to between 18½ and 20 feet both north and south of the point of impact. The highway was 22 feet wide between the walls (6 inches high) of the culvert. The bus was 33 feet long, 8 feet wide and weighed 9 tons. The tractor was 15 feet long joined by a gooseneck to the trailer 28¼ feet in length. The entire length of the combination vehicle was 43½ feet. The width of the trailer was 8 feet with its bed 18 to 20 inches above the surface of the highway. The machine being transported by the tractor-trailer was a caterpillar tractor equipped with a bulldozer, weighing 18½ tons. The tractor-trailer truck and the bulldozer equipment weighed 62,000 pounds or 31 tons. The blade of the bulldozer was 12 feet 3 inches long and about 36 inches wide. It extended 25 inches over the left side of the body of the

trailer. · The entire width of the load on the truck was 147 inches.

The bus was proceeding at the rate of 30 miles per hour down a long grade, which was straight for approximately 1,000 feet and terminated at the culvert. The trailer truck was traveling down a. slight grade at the rate of 10 to 15 miles an hour as it approached the culvert. The center of the highway was marked with an intermittent white line which.clearly indicated the north and south traffic lanes.

The collision occurred on or just north of the culvert. Part of the excess width of the load extended over the right side of the trailer of the truck, and a part, at least 25 inches, extended over the left side so that, if the right wheels of the trailer truck remained on the hard surface of the highway, the blade of the bulldozer extended to or across the center of a highway 18½ to 20 feet wide. The blade of the bulldozer cut a gash in the left side of the bus 21 inches deep. This gash extended the length of the bus. The collision caused the death of plaintiff's decedent and the deaths of, and injuries to, others. The driver of the bus was injured by the impact and lost control of the vehicle, which finally came to rest on the west side of the road entirely off the hard surface against a tree 8 inches in diameter 150 feet north of the culvert. The tractor-trailer stopped approximately 40 feet south of the culvert on the west side of the road with its left dual wheels partly over the center of the highway. This was the position of the vehicles involved in the collision when the driver of a second bus arrived on the scene a few minutes after the collision. The driver of the second bus, in order to avoid a collision with the blade of the bulldozer, was compelled to make a quick turn to the east and to drive off the hard surface on the east side of the road just south of the culvert.

▊ All defendants concede that plaintiff is entitled to recover, but each group contends that the negligence of the other was the sole proximate cause of the collision and the catastrophic result. The width of the trailer truck and its load exceeded the width allowed by statute by 51 inches

and extended beyond the fender and body on the left side of the truck. Michie's Code 1942, sec. 2154 (158), (a) and (e). The combined weight of the trailer truck and its load exceeded the weight allowed by statute (without a special permit) by 27,000 pounds. Michie's Code 1942, sec. 2154 (160). Robert Jackson, in driving this truck on a dark, rainy night with its illegal weight and illegal width, with the blade of the bulldozer (5 feet 4 inches above the surface of the highway) protruding 25 inches beyond the trailer (8 feet wide) on the side next to the northbound traffic lane, created a situation inherently dangerous to other users of the highway. The trial court correctly instructed the jury that the violation of any one or more of these three statutory provisions was negligence and that, if the jury believed that such negligence was *a* proximate cause of the death of decedent, plaintiff was entitled to recover. We find no error in these or the other instructions submitting the issues to the jury.

The first verdict returned by the jury read: "We, the jury find in favor of the plaintiff and against the said E. W. Grannis, V. B. Higgins, McDevitt and Street Company, a corporation, and F. N. Thompson, a partnership and joint venture operated under the name of Grannis, Higgins, Thompson and McDevitt Company, defendant, and in the sum of $15,000.00."

It will be noted that the jury did not find against either Robert Jackson, the driver of the truck, or the Atlantic Greyhound Corporation. Attorneys for defendants demanded that the verdict be accepted and recorded. After argument and while the jury were still in the box, the trial court made the following statement to them: "Gentlemen of the jury, the Court tells you that it is obvious from this verdict as you have written it that you are in error in understanding the relationship of the parties, that you apparently found against the joint venture but not against Robert Jackson, the man hauling the bulldozer down the road, and the Court is going to ask you to again retire to your room and further consider your verdict." The jury

then retired, but, on the suggestion of counsel, were brought into the courtroom again. The court asked the jury if they understood the connection and relation of Robert Jackson to his employers. One of the jurors stated that they had reached the conclusion that he was an employee and further stated that the jurors had made a mistake. Later the jury returned a verdict in favor of the plaintiff against the parties named and Robert Jackson, assessed the damages at $15,000, and, in addition, the jury stated in the verdict: "We find in favor of the defendants Atlantic Greyhound Corporation, Highway Equipment and Construction Company, and McDevitt and Street Company." The jurors were polled; the verdict was received and recorded. The trial court set aside the verdict in favor of the Atlantic Greyhound Corporation and entered judgment against it and all the defendants except the Highway Equipment and Construction Company and the McDevitt and Street Company. The judgment, dismissing the action against the Highway Equipment and Construction Company and the McDevitt and Street Company, is now final.

█ █ It was clear from the first verdict returned by the jury that the jury had misconceived the law as set forth in the instructions applicable to the evidence—that is, that the employers of Robert Jackson were not liable if Robert Jackson was not guilty of negligence. It was the duty of the trial judge to ascertain from the jury its true intention—that is, to ascertain the exact amount of damages it intended to assess and the names of the defendants who in its opinion were liable to pay the sum to which it found plaintiff was entitled, and to put the verdict in proper form to express that intention. *Remine* v. *Whited*, 180 Va. 1, 21 S. E. (2d) 743. This duty the trial judge fully performed without prejudice to any of the litigants. If the first verdict had been accepted, as the attorneys for Robert Jackson and his employers insisted should have been done, it would have been the duty of the court to set aside the finding insofar as it acquitted Robert Jackson and to enter judgment against him as well as his employers because his employers were

only liable on the doctrine of *respondeat superior*. *Gable* v. *Bingler*, 177 Va. 641, 15 S. E. (2d) 33. The testimony of Robert Jackson convicts him of negligence as a matter of law. This is true notwithstanding the fact that the evidence was in conflict as to whether or not there was a light on the end of the bulldozer blade. It is negligence as a matter of law and endangers the lives of other users of the highway for any vehicle to be driven at night on the highway carrying a load 147 inches wide with a combined weight of 62,000 pounds, and with a projection extending 25 inches beyond the line of the fender and body on the left side of the vehicle.

The troublesome question presented is whether the trial court committed error in holding Victor Blue, the driver of the bus, guilty of negligence as a matter of law.

Attorneys for plaintiff and attorneys for the other defendants were vehement in their fantastic argument to the effect that the testimony of Victor Blue himself convicts him of 22 separate acts of negligence. It is true that this witness made inconsistent statements to the jury. In some instances, the reasons he advanced for his position were not convincing. His testimony must be weighed with all the other evidence in the record to determine (1) whether he was operating his bus at a reasonable rate of speed under the circumstances and conditions then existing, (2) whether he was driving on the right side of the highway, (3) whether he kept a proper lookout, and (4) whether he had the bus under proper control.

These issues were fairly submitted to the jury, who, in express terms, found that Victor Blue was not guilty of any negligence which was a proximate or contributing cause of the accident.

While a verdict disapproved by the trial court is not entitled to the same weight as a verdict approved by it, if the record contains credible testimony to support the finding of a jury, such finding cannot be disturbed either by the trial court or by this court. The applicable rule has been stated and restated many times.

■ In *Forbes & Co.* v. *Southern Cotton Oil Co.*, 130 Va. 245, 259, 108 S. E. 15, Judge Burks, after reviewing many Virginia cases on the subject, summarized their holdings as follows: "It is not sufficient that the judge if on the jury, would have rendered a different verdict. It is not sufficient that there is a great preponderance of the evidence against it. If there is conflict of the testimony on a material point, or if reasonably fair-minded men may differ as to the conclusions of fact to be drawn from the evidence, or if the conclusion is dependent upon the weight to be given the testimony, in all such cases the verdict of the jury is final and conclusive and cannot be disturbed either by the trial court, or by this court, or if improperly set aside by the trial court, it will be reinstated by this court." See *Hoover* v. *Neff*, 183 Va. 56, 31 S. E. (2d) 265; Burks Pl. & Prac., 3d Ed., p. 543 and notes.

■ With these guiding principles in mind, we re-examine the evidence, conscious of the fact that the Greyhound, and hence Victor Blue, owed to plaintiff's decedent the highest degree of practical care and caution known to human prudence and foresight. The evidence from this point of view may be summarized as follows:

Victor Blue, not a party to the action, testified that he was thoroughly familiar with the highway and the construction and location of the culvert. He had driven over this route 200 times. It was a dark and rainy night. He came down the hill toward the culvert at a speed of approximately 30 miles an hour. Approaching the culvert he was traveling on the right hand side of the road going north, as close to the right hand edge of the hard surface as he could drive with due regard to the safety of his passengers. He had his foot on the brake. He had the bus under control and could have stopped it within 66 feet. He could see ahead, although the rain caused some obstruction to his vision, but his windshield wiper was in good condition and working properly. The headlights on the bus were dimmed, which threw the light on the surface of the highway for 100 feet in front of the bus. He was meeting southbound traffic. Just before the

collision he met and safely passed several southbound auto-
mobiles. He saw the headlights of the approaching trailer
truck some 300 feet ahead, apparently on its proper side
of the highway. He thought it was another automobile
approaching as it did not have any lights over the cab,
the sides or the end of the protruding bulldozer blade. He
did not ascertain that the approaching vehicle was a trailer
truck until he got by the beam of the headlights of the
truck. He safely passed the front end of the truck and
when, within 10 feet of the blade, he realized the danger and
cut his bus sharply to the right, it was too late to avoid the
impact. He was knocked sideways out of his seat and
lost control of the bus. He attempted to stop it but was
unable to do so. Other testimony shows that the bus came
to rest entirely off the hard surface on the west side of the
road 150 feet from the north end of the culvert.

George D. Johnson was driving a bus of the Sutton
Bus Lines and was following the Greyhound bus. He ar-
rived at the scene of the accident from 5 to 10 minutes
after the collision. He stated that, as he came down the
incline towards the culvert, he was driving at the rate of
about 30 miles an hour. He saw the headlights of the
trailer truck facing him apparently on the proper side of
the road. When he got beyond the beam of the headlights
of the truck, he saw for the first time that the vehicle was
a trailer truck and that a dark object was protruding across
his traffic lane. He immediately cut his bus to the right and
ran off the hard surface, stopping within a few feet of the
drain under the culvert. On examination of the trailer
truck, this witness found that the left dual wheels were
partly over the center lane of the highway and that the
dark object was the bulldozer blade protruding across the
north lane of traffic to within 3 feet of the eastern edge
of the highway. He examined the bulldozer blade and found
no lights or any evidence that it had been wired for lights.

Other witnesses testified that they examined the trailer
truck for evidence of lights on the bulldozer blade and
found none. They also examined the trailer truck for evi-

dence of points of contact between the bus and the trailer. They observed some light scratches on the left side of the bed of the trailer starting about midway and continuing to the rear. The rim of the left rear wheel was damaged, but there was no indication from the center of the trailer toward the front that it had been in a collision. All of the debris from the collision was located on the bus driver's side of the road beginning 10 feet north of the north end of the culvert and extending about 20 feet northerly. Most of the debris was lying in a half moon shape.

Two passengers testified. One was sitting on the right side of the bus in the fourth row from the front and noticed that the bus was approaching the points of collision at a moderate rate of speed and on its right side of the highway. The other passenger testified that she was sitting on the third seat from the front on the right hand side, that the bus was traveling on its side of the highway at a moderate rate of speed, that the driver used every precaution possible to avoid the accident and that the accident occurred through no fault of his. This witness did state that she saw several lights burning over the cab of the approaching truck but she saw none on the left side. She did not see the bulldozer blade or any lights to indicate that an object was protruding on the left side of the truck.

Plaintiff and the defendants, other than the Greyhound Corporation, contend that the evidence as detailed is unbelievable and inherently incredible. This contention is based on the conflicting statements made by Victor Blue. On direct examination, he stated that there were no white lines on the highway, that he saw the side walls of the culvert, the posts on each side of the highway, and that he knew the right side of his bus was within a foot of the right 6-inch wall on the culvert. On his cross-examination, when shown a picture of the highway taken a short while after the accident showing the intermittent white lines, he admitted that he was mistaken in his statement that there were no white lines indicating the center of the highway. He admitted that he had said on a previous occasion that

he had not seen the side walls; but, on this examination, he stated that he had given his previous testimony considerable thought and that he had reached the conclusion that he did see the culvert walls but that "I wasn't paying any (more) attention to that than I would a piece of paper lying on the side of the road there." Blue further testified on cross-examination that he did not slow down although he could have stopped his bus within 66 feet. These and other contradictory statements tend to weaken the credibility of the witness and cast doubt on the accuracy of his observations and his ability to express his meaning clearly. It is not a question of whether the court, if it were on the jury, would have rejected the testimony of this witness. It is a question of whether the jury had a right to weigh the positive testimony of the witness and to accept the statements most favorable to him. There is nothing inherently unbelievable in Victor Blue's direct testimony. It is apparent that the accident would have happened if Blue had operated his bus in the careful and prudent manner he said he did.

This court has frequently passed upon similar issues. The latest case to which our attention has been called is *Bristow* v. *Brauer,* 175 Va. 118, 122, 123, 7 S. E. (2d) 93, in which Justice Spratley, speaking for the court, said:

" 'Not every witness is a master of expression, and it sometimes happens that under skillful cross-examination, a witness unintentionally says or imperfectly says something that may appear to be inconsistent with previous statements. The jury, however, have the entire picture before them and can make proper allowances.'

" 'The fact that a witness makes inconsistent statements in regard to the subject matter under investigation does not render the testimony of the witness nugatory. It is the province of the jury to pass upon such inconsistent statements and to give or withhold its assent to the truthfulness of the particular statement.' *Richmond-Washington Motor Coaches* v. *Austin,* 154 Va. 148, 152 S. E. 357, 358;

*Tignor* v. *Virginia Elec., etc., Co.,* 166 Va. 284, 184 S. E. 234.

█ " "If a condition of facts is such that the jury may deduce from them more than one inference or conclusion, the court, upon a motion to set aside their verdict * * * has no such discretion, but is bound down to that interpretation of the facts, and is constrained to adopt that conclusion from the evidence, which the jury have sanctioned by their verdict.' *Cochran* v. *London Assur. Corp.,* 93 Va. 553, 562, 25 S. E. 597, 600; *Revell* v. *Ballard,* 144 Va. 371, 132 S. E. 322; *Tignor* v. *Virginia Elec., etc., Co., supra.*"

While Victor Blue was rather vague in giving his reasons for knowing that he was driving on his side of the road, he was positive, both on direct and cross-examination, that he was keeping a proper lookout, that he was operating his bus at a reasonable rate of speed on his side of the road and that he had the bus under reasonable and proper control. In this he was corroborated by the testimony of two passengers on the bus. While they may not have been paying particular attention to the exact location of the bus on the highway and their opportunities for observation may not have been as good as those of the driver of the bus, each of them was positive that the bus was being carefully operated on the right side of the road.

█ It is also contended that the fact that the blade of the bulldozer penetrated the bus to a depth of 21 inches is a physical fact showing that the bus was being operated too close to the center of the highway. This contention is based on the testimony to the effect that the bulldozer blade extended over the left side of the truck 25 inches and that, if the blade penetrated the bus 21 inches, then the left side of the bus was within 4 inches of the left side of the truck. This contention is not convincing. The testimony is to the effect that the blade of the bulldozer was sitting somewhat diagonally across the bed of the trailer. Under these conditions, when the bus came in contact with the extreme left end of the blade, it would have a tendency to draw the bus toward the body of the truck. The scratches and marks

on the side of the body of the trailer tend to prove that traction drew the two vehicles closer together after the first impact. This contention presumes that the trailer truck was traveling on its side of the highway, which neither the Atlantic Greyhound Corporation nor plaintiff concedes to be true. At any rate, the depth of the gash in the left side of the bus is not conclusive evidence as to how close to the center of the highway the bus was being operated.

Victor Blue and the Atlantic Greyhound Corporation instituted an action for damages arising out of the same collision against Robert Jackson and his employers in the U. S. District Court for the Eastern District of Virginia, in which case the negligence of Victor Blue was a vital issue. This question was submitted to the jury, which found Victor Blue free of negligence in operating the Greyhound bus. This finding of the jury was approved by the trial judge, and, on appeal to the U. S. Circuit Court of Appeals for the Fourth Circuit (*Robert Jackson and others v. Victor Blue*, 152 F. (2d) 67, 70); it was held that the question of whether or not Victor Blue was guilty of contributory negligence which would bar his recovery was properly submitted to the jury.

In the opinion Judge Soper, speaking to the point, said: "It is said that he (Victor Blue) was driving negligently on a wet, slippery surface after dark in excess of the lawful speed of 35 miles per hour on the wrong side of the road without keeping a proper lookout for passing vehicles; and it is suggested that if he had been driving carefully, he could have avoided the tractor-trailer by driving off the road before reaching the culvert as did the driver of the second section of the Greyhound line on the night of the accident.

"If these allegations were proved beyond question, the defense would be made out; but they represent in large part the conclusions of the defendants on disputed questions of fact. The charge of excessive speed is based upon the fact that the heavy bulldozer was dislodged from its original position on the trailer when it was struck by the much lighter bus, and by the fact that the bus traveled a substantial distance after the collision before it was stopped. The

charge that the bus was on the wrong side of the road is based upon the testimony of the men in charge of the tractor-trailer. The charge that the plaintiff failed to keep a proper lookout rests on his testimony that he saw only the headlights of the approaching tractor-trailer whereas other witnesses testified that the tractor-trailer carried thirteen other lights variously placed on the vehicles in the combination, as well as a red marker light welded to the left bottom edge of the bulldozer blade.

"All of these matters were submitted to the jury when the judge charged the jury on the question of contributory negligence, and we think that the defendants were entitled to nothing more."

The fact that Victor Blue, as a servant of the Atlantic Greyhound Corporation, owed plaintiff's decedent, in the case now under consideration, a higher degree of care and caution than he owed the defendants in the case tried in the Federal court is not sufficient, on the evidence in this case, to take the question of Blue's negligence, whether slight or ordinary, from the jury.

There are other assignments of error stated in the separate petitions of the Atlantic Greyhound Corporation and Robert Jackson and others, but, in view of what has been said in the foregoing opinion, it is unnecessary to discuss them.

The verdict and judgment entered against the Atlantic Greyhound Corporation is set aside and reversed, and the case against the Atlantic Greyhound Corporation dismissed; but in all other respects the judgment of the trial court is affirmed.

*Reversed in part; affirmed in part.*