# Richmond

MARY L. CRIST v. WASHINGTON, VIRGINIA AND MARYLAND COACH COMPANY, INCORPORATED.

January 17, 1955.

Record No. 4310.

Present, Hudgins, C.J., and Eggleston, Spratley, Buchanan, Miller and Smith, JJ.

The opinion states the case.

*McGinnis & Tymoff*, for the plaintiff in error.

*Boothe, Dudley, Koontz & Boothe,* for the defendant in error.

SMITH, J., delivered the opinion of the court.

This is an action by Mary L. Crist, hereinafter called plaintiff, against Washington, Virginia and Maryland Coach Company, Incorporated, hereinafter called defendant, to recover $375,000.00 for personal injuries claimed to have been sustained when the defendant's bus on which she was riding as a passenger ran into a curb and threw her from her seat to the floor.

The jury upon a trial of the case returned a verdict in favor of the defendant which was set aside and a judgment for $6,000.00 awarded the plaintiff, to which action of the court we granted the plaintiff a writ of error.

Plaintiff excepted to the action of the trial court and assigned the following errors:

"1. The Court erred in refusing to grant a new trial, limited solely to the quantum of damages.

"2. The Court erred in refusing to grant a new trial, hence denying the Plaintiff the right to have a jury determine the amount of damages.

"3. The Court erred in determining the damages in that said amount was arbitrarily arrived at and said amount was inadequate and insufficient and not based upon the evidence as offered on behalf of the Plaintiff."

Defendant excepted to the action of the court in setting aside the verdict for the defendant and in refusing to enter judgment on the verdict and has properly presented its exception by assignments of cross-error.

During the early afternoon of December 22, 1950, the plaintiff was a passenger on one of the defendant's buses, which was travelling from Washington, D. C. over Columbia Pike in Arlington county, at which time the weather was bad, it was snowing and the roads were very slick.

The bus, proceeding very slowly, came down a long hill before reaching the turn from Columbia Pike into Washington Boulevard where an island divides the traffic coming into Washington Boulevard from that coming out. In making the short right turn onto Washington Boulevard the roadway is wide enough for only one lane of traffic. As the driver was negotiating this turn his bus skidded slightly, and the left front wheel bumped the curbing of the island; however, the bus did not stop its forward motion but continued on toward its destination.

The plaintiff was sitting next to the aisle on the first seat on the right hand side of the bus. When the bus struck the curb she fell from her seat to the floor. Another passenger, Mrs. Ethel Oliff, and her granddaughter immediately helped the plaintiff from the floor of the bus, but the driver was not aware of her fall until she told him of it upon arriving at her destination, which was a considerable distance from where the incident occurred.

The first and decisive question in this case is whether the trial court erred in setting aside the verdict of the jury in favor of the defendant.

A case in many respects similar to the one before us is *Atl. Greyhound Corp.* v. *Shelton*, 184 Va. 684, 36 S. E. (2d) 625, an action against a bus company for the death of a passenger which occurred when the bus collided with a trailer truck. The trial court set aside a verdict for the bus company and entered judgment against it for $15,000.00. On appeal it was held that notwithstanding the bus driver owed the decedent the highest degree of care, the question of negligence was for the jury. Upon entering final judgment for the bus company, Justice Hudgins, now Chief Justice, said:

"While a verdict disapproved by the trial court is not entitled to the same weight as a verdict approved by it, if the record contains credible testimony to support the finding of a jury, such finding cannot be disturbed either by the trial court or by this court. The applicable rule has been stated and restated many times.

"In *Forbes & Co.* v. *Southern Cotton Oil Co.*, 130 Va. 245, 259, 108 S. E. 15, Judge Burks, after reviewing many Virginia cases on the subject, summarized their holdings as follows: 'It is not sufficient that the judge if on the jury, would have rendered a different verdict. It is not sufficient that there is a great preponderance of the evidence against it. If there is conflict of the testimony on a material point, or if reasonably fair-minded men may differ as to the conclusions of fact to be drawn from the evidence, or if the conclusion is dependent upon the weight to be given the testimony, in all such cases the verdict of the jury is final and conclusive and cannot be disturbed either by the trial court, or by this court, or if improperly set aside by the trial court, it will be reinstated by this court.'" 184 Va., at pages 692, 693.

■■ It is well settled that a common carrier must exercise the highest degree of practical care for the safety of its passengers, but this degree of care does not mean that the carrier is an insurer of its passengers' safety or require of it perfect human care. *Virginia Transit Co.* v. *Tidd*, 194 Va. 418, 73 S. E. (2d) 405; *Tri-State Coach Corp.* v. *Stidham*, 191 Va. 790, 62 S. E. (2d) 894; *Atl. Greyhound Corp.* v. *Shelton, supra; City of Portsmouth* v. *Madrey*, 168 Va. 517, 191 S. E. 595; 3 Michie's Jur., Carriers, § 49, p. 738.

Hence, a common carrier of passengers is not liable for the ordinary jerks and jolts which are necessarily incident to the use of the conveyance, but it is liable for injuries resulting from jerks or jolts which are not necessarily incident to the use of the conveyance or which are unusually sudden or violent. *Richmond Greyhound Lines* v. *Ramos*, 177 Va. 20, 12 S. E. (2d) 789, (noted in 138 A. L. R. 225); 13 C. J. S., Carriers, § 750, p. 1410; 10 Am. Jur., Carriers, § 1343, p. 213.

To recover damages in an action against a common carrier for personal injuries, the injured passenger, like any other plaintiff, must prove his case by a preponderance of the evidence and he does not prove it merely by showing that

he was injured. This burden does not shift to the defendant and the rule is not changed by the standard of care which the carrier must observe. *Cleveland* v. *Danville, etc., Co.*, 179 Va. 256, 18 S. E. (2d) 913; *Virginia E. & P. Co.* v. *Lenz*, 158 Va. 732, 164 S. E. 572; 3 Michie's Jur., Carriers, § 93, p. 805.

With these controlling principles in mind and in the light of the verdict we will examine the evidence in some detail. When the case came on for trial plaintiff was without counsel; and the trial judge, under most difficult circumstances, exhibited commendable patience and extended her all the assistance that he could have properly given.

The plaintiff's testimony consisted of her opening statement to the jury which she later chose to adopt as her sworn testimony. Much of this testimony was hearsay and contained references to the defendant's insurance carrier. Her description of how the accident occurred was as follows: "This bus, at Columbia Pike and Washington Boulevard, at the Military Cemetery, made a turn, a right turn. It ran up on an island in the middle of the street. It knocked me off of my seat on the floor, with my feet sort of underneath of me. It came down off of the curb or the island and hit the curb on the right-hand side.

"The driver did not do anything for me. He never stopped the bus. I do believe I sat in the middle of the floor for five minutes. I could not move. I could not pull my legs out. I was just like I was paralyzed. No one helped me. A lady on the long front seat reached over and pulled my dress down. I was sitting on the right-hand seat facing the driver, and it threw me to the left.

"When I got to Columbia Pike—I mean, when I got to Glebe Road and Sixth Street, I could not move. I had terrible pains in the lower part of my back. There was no sleet. There was no ice. It had been snowing a little, which was a very wet snow, not much, at that."

Mrs. Elizabeth Kuntz, a passenger on the bus, testified for the plaintiff as follows:

" * * * I was going home from work, and it had been snowing that day, I do remember about that. The streets were slick and as far as I know, the bus hit one of the curbs, but it is a short turn there and the driver was driving very slowly and had been all the way down the hill because I do not know if it was the rush hour or whether we had gotten off early. I remember I was on my way home from the office when this happened, * * * . The best I remember, she was sitting on the outside of the seat and she skidded off. * * * At the time, nobody paid much attention to it. In fact, as I remember, there was a little snicker around on the bus, but before we got to Clarendon I looked around and the lady was going, and so she says she wanted my name."

This witness on cross examination was asked:

"Q. You say the bus was going quite slowly there at the turn?

"A. Oh, yes. They have to slow down almost to a stop or they cannot make the turn there, even when the streets are dry.

"Q. So he slowed down almost to a stop there at the time?

"A. I would say so, yes, sir.

"Q. Were you conscious of anything unusual in his driving until the bus hit the left curb?

"A. No."

Mrs. Kuntz further testified that the left front wheel of the bus struck the left curb as the driver "made that turn, he just did not turn as short as he should have, but that is very easy to do, even with an automobile, there."

On questions by the court this occurred:

"Q. He went over the left side and went across the island?

"A. He did not go across the island, he just bumped it with his front wheel.

"Q. He never did stop?

"A. No, just bumped it."

This witness on redirect examination was asked the speed

of the bus and answered as follows: "Oh, I would not hazard a guess as to mileage, but I know he was practically stopped because I have to come to almost a dead stop to make that curve in my car, and I make it every afternoon coming home from work. He could not make it if he had not been almost stopped."

Mrs. Ethel Oliff, called by the plaintiff, testified that she was riding on the bus at the time of the accident and with the aid of her granddaughter helped the plaintiff up immediately after she fell. She further testified that two wheels of the bus ran over the curb on the right side of the road and that the bus driver was not aware of the plaintiff's fall. This witness was questioned by the plaintiff as follows:

"Q. Would you say that was carelessness and negligence on the driver's part?

"A. Well, maybe in a way, but it was icy and so forth, and I know it is a short turn there coming off Columbia Pike on to the Washington Boulevard, but I could not say whether it was careless or not.

"Q. Don't you know there was no ice or sleet on that day?

"A. It had snowed. I do not know about the ice, but it had snowed. It was wet, but I do know that is a short turn there to get off the pike on to the Washington Boulevard."

The defendant called the bus driver who testified as follows: "I had gone into Washington with my bus to pick up a load of passengers. There was a lot of skidding that day. It was a bad day, cloudy, but the roads were not impassable on my way in.

"In the time I had gone into Washington and come back to Navy Annex, it had apparently rained and it turned into a light snow. It was very slick, and my bus slipped or skidded slightly as I made the turn, a right-hand turn off of Columbia Pike going due west on to South Washington Boulevard. The bus skidded slightly and glanced into the curbing. I never stopped going forward. * * * That was the left front wheel of the bus grazed the left hand curbing."

He further testified that while he was conscious he hit the curb he did not know that plaintiff had fallen until she told him upon reaching her destination and after all the passengers had left the bus.

No statement of the testimony material to the decision of the jury would be complete without at least a brief statement of the evidence concerning the plaintiff's alleged injuries. The evidence shows that she was a patient in at least four hospitals, including Johns Hopkins and the Medical College of Virginia, and consulted at least 20 doctors seeking to confirm her contention that she was suffering from ruptured or slipped discs. Four of these doctors were called by the plaintiff. One of them, Dr. John M. Meredith of the Neurosurgical Staff of the Medical College of Virginia, testified that on April 24, 1952, members of his staff made a myelogram and other tests to see whether or not plaintiff had a ruptured or slipped disc. He further testified that the myelogram was "perfectly normal" and that there was no injury to the plaintiff's back.

Dr. Roy Nicholson, a friend of the plaintiff's family and her family physician, was the first doctor to examine the plaintiff after the accident and he testified that his "number one listing of diagnosis was sacroiliac strain of undetermined origin." He further testified that during March 1951 the plaintiff took an automobile trip to Florida, which in his opinion she could not have done if she were suffering from a ruptured disc.

Upon being questioned by the plaintiff as to what he meant when he told her he did not want to get involved in this suit and that he would do her more harm than good, Dr. Nicholson said: "Simply this, that I did not feel that your case against the bus company is just, that your injuries are not organic, that I question in my own mind as to whether or not your present conditions have any regard whatever, have any connection whatever, with the minor accident that you had on the bus. That is my honest feeling in the matter."

The plaintiff contends that when the bus skidded into the curb there was an unusually sudden and violent jolt or jerk which threw her from her seat and caused her serious injury. The skidding of an automobile is not negligence *per se*, but is a circumstance to be considered along with all the other evidence in determining whether negligence has been proved. *Jones* v. *Nugent*, 164 Va. 378, 180 S. E. 161; *James* v. *Von Schuckman*, 115 Conn. 490, 162 A. 3. See also the annotations in 126 A. L. R. 1084 and 113 A. L. R. 1002. While the extent of injury may be evidence of a sudden and violent jolt or jerk, it was for the jury to decide whether the striking of the curb was a sudden or violent jolt or jerk or whether it was slight and ordinary, and upon all the evidence whether the bus driver was guilty of negligence.

Here there was credible testimony before the jury which justified it in finding that the driver of the bus was exercising the highest degree of practical care for the protection of his passengers when his bus slipped or skidded into the curb as it very slowly turned the sharp curve into Washington Boulevard, over a wet and slippery street. Thus the trial court erred in setting aside the verdict of the jury and therefore the judgment is reversed, the verdict reinstated and final judgment entered here for the defendant.

*Reversed and final judgment.*