# Richmond

## Richmond Oil Equipment Company, Inc. v.
## W. T. Holt, Inc.

April 25, 1949.

Record No. 3467.

Present, All the Justices.

The opinion states the case.

*Robert Lewis Young* and *John B. Browder*, for the plaintiff in error.

*George E. Allen*, for the defendant in error.

GREGORY, J., delivered the opinion of the court.

W. T. Holt, Incorporated, instituted this action by notice of motion against Richmond Oil Equipment Company, Incorporated, to recover damages to its truck, alleged to have occurred as a result of the defendant's negligence. By agree-

ment, a jury was waived and all matters of law and fact were submitted to the court. The court found in favor of the plaintiff for $6,500, and a judgment was accordingly entered for that amount.

The case arose out of a collision between a Chevrolet truck owned by the Richmond Oil Equipment Co., Inc., and operated by one of its servants, and a gasoline tank truck hauling 4,200 gallons of gasoline, owned by the plaintiff and operated by one of its servants.

The collision occurred at the intersection of U. S. Highway No. 1, which runs from Richmond to Washington, with Virginia State alternate route south No. 161, or Hilliard road, as it is often referred to. This intersection is about .7 of a mile north of the Richmond city limits, and the highways cross at right angles, No. 1 highway running north and south, and Hilliard road east and west. The hard surface portion of No. 1 highway is 40 feet wide and is divided into four lanes of traffic, indicated by painted white lines, each of which is about 10 feet wide. The hard surface portion of Hilliard road was approximately 18 feet wide, except that it fanned out at the junction of No. 1 highway. On the south side of Hilliard road, from which the defendant's truck was coming, about 20 feet from the western edge of No. 1 highway, there was a stop sign. On the eastern side of No. 1 highway there were on either side of Hilliard road large brick arches, the distance between them being 30 feet, as estimated by one witness.

On April 9, 1947, about 1:30 p. m., the plaintiff's tank truck, consisting of a White tractor with a tank semi-trailer attached and loaded with 4,200 gallons of high-test gasoline, weighing 40,000 pounds or more, was being driven northwardly on No. 1 highway by one of plaintiff's employees named Hodge. According to his testimony he approached the intersection, with which he was very familiar, from the south, using the outside lane, driving in the direction of Washington, at a speed of 45 to 50 miles per hour. He said that when he was about 200 feet from the intersection he looked to his left at Hilliard road and

saw nothing approaching. He next looked to his right and saw two automobiles stationary in the eastern entrance into Hilliard road, headed in the direction of No. 1 highway. They were standing side by side. He again looked to his left and saw the defendant's truck in or entering the inside or northbound lane from his left. It was moving but he stated that he could not estimate its speed. At the time he discovered the defendant's truck he was within 10 or 15 feet from the intersection, "right at" or "right up on" the defendant's truck, and he could not recall whether he was able to apply his brakes. There were no brake skid marks on the road from his truck.

A fair conclusion from the evidence is that the plaintiff's tank truck collided with the defendant's truck at a point near or at the middle of the latter truck. The defendant's truck was completely demolished, and the driver of that truck and his companion were killed instantly. After the collision the plaintiff's tank truck ran off the highway and into a field on the right hand side. What remained of the defendant's truck was knocked or pushed off the highway to the right into the field. There were two scuff marks in the northbound lane made by the tires of defendant's truck as it was pushed along after the impact.

According to Hodge, he could have stopped his truck, going at the rate of 45 to 50 miles an hour, in some 200 feet.

Hodge received severe burns and other injuries from the accident and was taken to the hospital where he remained some three or four weeks. During the afternoon of the day of the accident an investigating officer talked to him in the X-ray room and he gave the officer certain statements concerning the accident. On the second day he was interviewed by an agent of the claim department of the defendant's public liability insurance carrier and gave him certain statements. At the time these statements were made Hodges was suffering great pain from his injuries and was not certain whether he was under the oxygen tent or not. He stated positively that he was in an oxygen tent

after the interview. It is claimed that these statements were in conflict with his testimony at the trial.

One of the cars which was standing in Hilliard road just right of No. 1 highway contained a Mr. Taylor, a traffic checker for the State Highway Department. He observed the plaintiff's truck as it approached the intersection, and said that it was being driven at about 45 miles an hour. The speed limit at that point was 50 miles per hour at that time.

The assignment of error is that the lower court erred in rendering judgment in favor of the plaintiff. It is argued that it will be presumed that the driver of the defendant's truck observed the stop sign as it approached No. 1 highway and brought his truck to a stop. It is also argued that as it proceeded to cross No. 1 highway it was prevented from entering the eastern side into Hilliard road on account of the two cars that were parked in Hilliard road side by side, and being compelled to stop, it was then struck by the plaintiff's truck. It is further argued that the plaintiff's driver, Hodge, was guilty of contributory negligence as a matter of law because he failed to maintain an effective lookout, failed to see defendant's truck promptly, failed to keep his vehicle under reasonable and proper control, and to drive at a prudent rate of speed.

Unless the judgment of the trial court is plainly wrong or without evidence to support it, we must affirm. Code, 1942, section 6363 (Michie).

The driver of the plaintiff's truck had the right of way at this intersection. Code, 1942, section 2154(123) (Michie). He was interested in ascertaining whether the two cars which were parked in Hilliard road to the right of No. 1 highway were going to move into No. 1 highway, and naturally he watched them to ascertain if they were standing still and were not going to move into No. 1 highway. They were closer and of more immediate concern than another approaching on Hilliard road to his left and which, in obedience to the stop sign, would be presumed to stop before entering No. 1 highway. He knew the stop sign

was there. He was driving on one of the most traveled highways in the State. No. 1 highway at that point is an arterial one and those traveling upon it have superior rights to those who enter from intersecting roads. He was not exceeding the speed limit and had the right to assume that his statutory right of way would not be violated until put upon notice to the contrary. Thus the vigilance required of the defendant's truck driver was greater than that required of plaintiff's driver. These considerations, no doubt, were in the mind of the court when it studied and weighed the testimony and all of the physical facts.

A great deal is said about inconsistent statements made by the witnesses, Hodge and Taylor, and as to the incredibility of their testimony. We have scanned it very carefully and think that it was for the trial court to determine whether or not it was incredible and unworthy of belief. We think that it was sufficient to be considered and to be weighed by the court. It had the right to accept this testimony and, no doubt, weighed it in the light of the fact that it might have been weakened by the alleged inconsistent statements, if any, of the witnesses. *Atlantic Greyhound Corp.* v. *Shelton,* 184 Va. 684, 36 S. E. (2d) 625, and cases there cited. We said in *Bristow* v. *Brauer,* 175 Va. 118, 7 S. E. (2d) 93, that the fact that a witness makes inconsistent statements in regard to the matter under investigation does not render the testimony of such a witness nugatory. It is the province of the jury or the judge, as the case may be, to pass upon such inconsistent statements and to give or withhold its assent to the truthfulness of the particular statement.

Finally it is urged that the legal load limit at the point of accident was 40,000 pounds, while the evidence discloses that the load and weight of tractor and trailer was 41,500 pounds, and that this constituted negligence. However, if it were negligence, under the evidence in this case it is not shown to have been the proximate cause of the collision or that it contributed thereto.

The court, by its judgment, having found that the defend-

ant's servant was guilty of actionable negligence, and that the servant of the plaintiff was free of contributory negligence, we feel bound by the finding, as there is credible evidence, in our judgment, to support it. Accordingly, it must be affirmed.

*Affirmed.*