# Richmond

ROBERT LEE SHELTON, AN INFANT, WHO SUES BY HIS MOTHER AND NEXT FRIEND, PAULINE SHELTON v. KATHRYN NELSON MULLINS.

CHARLES L. SHELTON v. KATHRYN NELSON MULLINS.

April 25, 1966.

Record Nos. 6159, 6160.

Present, Eggleston, C. J., and Buchanan, Snead, I'Anson, Carrico and Gordon, JJ.

*James C. Turk* (*Dalton, Poff & Turk*, on brief), for the plaintiffs in error.

*John B. Spiers, Jr.* (*Spiers and Spiers*, on brief), for the defendant in error.

EGGLESTON, C. J., delivered the opinion of the court.

Robert Lee Shelton, aged three, while attempting to cross Seventh street in the city of Radford, was struck and injured by a car driven by Mrs. Kathryn Nelson Mullins. Suing by his mother and next friend, the child filed a motion for judgment against Mrs. Mullins to recover damages for his injuries. The father filed suit against Mrs. Mullins to recover medical, hospital and other expenses incurred in attempting to cure the child of such injuries. Pursuant to Code, § 8-629, as amended [Repl. Vol. 1957], the cases were tried together before a jury and each resulted in a verdict and judgment for the defendant. We granted a writ of error in each case.

While there is an assignment of error challenging the sufficiency of the evidence to sustain the verdicts and judgments, this is not pressed and the pertinent question presented to us is whether the trial court erred in its rulings on various instructions granted and refused.

The accident occurred about 6:30 P. M. on September 2, 1960, during daylight, when the streets were dry. Seventh street runs north and south and is paved to a width of 18 feet. On the eastern side of the street a sloping bank leads from the yard of the Alfred Tolley residence down to the street. The only eyewitnesses to the accident were Mrs. Pauline Shelton, the mother of the boy, and Mrs. Mullins, the driver of the car.

Mrs. Shelton testified that under her direction and while she was standing near the western side of Seventh street, the little boy went eastwardly across the street to give a toy to another boy with whom he had just been playing. According to Mrs. Shelton, after the Shelton boy had delivered the toy to his playmate the two boys stood together for several minutes on the bank, six or seven feet from the eastern edge of the pavement and slightly north of the walk leading to the Tolley residence. While the children were thus standing, Mrs. Shelton says, she looked to her right—that is, to the south—and saw the Mullins car coming northwardly along the street. Fearing that her child might attempt to cross ahead of the approaching car, Mrs. Shelton waved to him and cried out, "Bobby, go back!" Despite this warning, she says, the child came down the bank to the eastern edge of the pavement, started across the street, and was struck by the Mullins car.

According to the further testimony of Mrs. Shelton, the two boys, standing near the eastern side of the street, were in plain view of Mrs. Mullins for a distance of at least 350 feet as she approached the scene. Mrs. Shelton said the Mullins car "was coming at a very fast speed," which she estimated to be at 30 to 35 miles per hour. However, there was evidence that at other times she had stated that the speed was much less than that, and on occasions had not claimed that the car was driven at an excessive speed. The permitted speed limit in that area was 25 miles per hour.

Mrs. Shelton further testified that at the time of the accident there were no other children playing in or near the Tolley yard. The evidence shows that there are trees along both sides of the street and that those on the eastern side partly obscure the view which the driver of a northbound vehicle has of the Tolley yard.

Mrs. Mullins testified that just before the accident she was driving "about 20 to 25 miles" per hour; that she saw Mrs. Shelton "waving her arms and hollering," but "I thought she was hollering at me and I waved at her;" that she then heard Mrs. Shelton's warning, "Bobby, go back!" She further said that "about that time" the Shelton child came from behind the trees or a post and "down a little embankment" in front of the walkway leading from the street to the Tolley residence, at which instant she was "almost on top of him;" that she applied her brakes, cut her car to the left, but was unable to avoid the impact. Her car was brought to a stop about 35 feet beyond the point where the child was struck. Mrs. Mullins denied that as she approached the scene the two boys were, as described by Mrs.

Shelton, standing on the bank near the eastern side of the street and in plain view.

At the trial below the plaintiffs objected to the granting of a number of instructions offered on behalf of the defendant. Among these was Instruction "B" which told the jury that "even though you may believe from a preponderance of the evidence that Mrs. Mullins was negligent, yet unless you further believe from a preponderance of the evidence that any such negligence was the *sole proximate cause* of the accident, you must find your verdict in favor of Mrs. Mullins." (Emphasis added.)

Instruction "H" told the jury that if they believed "that it is just as probable that the injuries to Robert Lee Shelton resulted from or were caused by the acts of *some third person,* or from some cause for which Mrs. Mullins is not responsible, as it is that such injuries resulted from a cause for which she is responsible, then your verdict should be for the defendant." (Emphasis added.)

Since the case was tried in the court below upon the correct principle that this three-year-old child was incapable of contributory negligence, these instructions were designed to permit the jury to exonerate the driver of the car from liability if they believed from the evidence that the mother of the child was guilty of negligence in permitting him to cross the street unattended, or in hollering and waving so as to distract the attention of the driver from her view of the street ahead, and that the mother's negligence was a proximate cause of the accident. In adopting this theory of the defendant and granting these instructions the trial court was in error.

In the first place, the negligence, if any, of the mother was not imputable to the child. *American Tobacco Co. v. Harrison,* 181 Va. 800, 809, 27 S. E. 2d 181, 185. In the next place, even if the mother were negligent this would not exonerate the driver from liability, provided the latter was guilty of negligence which was a proximate cause of the accident. *Richmond Coca-Cola Bottling Works* v. *Andrews,* 173 Va. 240, 251, 3 S. E. 2d 419, 423; *Schools* v. *Walker,* 187 Va. 619, 629, 630, 47 S. E. 2d 418, 423.

Over the objection of the plaintiffs the trial court granted, on motion of the defendant, Instruction "C-1a" which read as follows:

"The court tells the jury that a motorist has a superior right of way over pedestrians between intersections; and further instructs you that in this case Mrs. Mullins had a right to assume that no pedestrian would attempt to cross Seventh street in front of her between intersections, and she had a right to rely on that assumption insofar as

Robert Lee Shelton was concerned until she saw, or in the exercise of reasonable care she should have seen, the Shelton child near or approaching the street; *and if you believe she saw or should have seen the child, in the exercise of reasonable care, in or near the street, then she was no longer justified in assuming that he would not attempt to cross the road.*" (Emphasis added.)

It is argued on behalf of the plaintiffs that a similar instruction was condemned in *Gabbard* v. *Knight*, 202 Va. 40, 116 S. E. 2d 73. In that case we said: "When the driver of an automobile sees, or by the exercise of ordinary care should see, a 20-month-old child near or approaching a street, he has no right to assume that the child will cross the street only at an intersection." 202 Va. at 47, 116 S. E. 2d at 77.

The addition of the italicized words in Instruction "C-1a" meets the requirement of the holding in the *Gabbard* case. No such language appeared in the instruction condemned in that case. Consequently, the granting of Instruction "C-1a" was not error.

Complaint is next made that the lower court erred in granting Instruction "F". This was an emergency instruction, the last paragraph of which told the jury that if they believed that Mrs. Mullins, "in proceeding along Seventh street was, without negligence on her part, confronted with a sudden emergency created by the actions of the Shelton child, and that she acted reasonably under such circumstances of sudden emergency, then she was not guilty of negligence merely because she failed to avoid the accident."

We agree with the argument on behalf of the plaintiffs that this instruction was not applicable in the present case. The plaintiffs' theory was that the driver of the car was guilty of negligence in not seeing the child and avoiding striking him as she approached. The defendant's theory was that she was free of negligence because her view of the child was obscured as she approached and that from this obscured position he ran into the path of the car. Thus the sole issue was whether, under the circumstances, the driver was guilty of negligence. No sudden emergency was involved.

The plaintiffs complain of Instruction "J" which read as follows:

"The court tells the jury that a witness may be impeached and discredited by prior inconsistent statements, and if you believe from the evidence in this case that any witness made inconsistent and contrary statements concerning the events in this case, then you have the

right to disregard the whole testimony or give it such weight to which you think it is entitled."

This instruction, which was directed to the alleged inconsistent statements of Mrs. Shelton about the accident, was clearly erroneous. We have repeatedly said that the fact that a witness makes inconsistent statements in regard to the subject-matter under investigation does does not render his testimony nugatory or unworthy of belief. It is the province of the jury to pass upon such inconsistent statements and give or withhold their assent to the truthfulness of the particular statement. *Bristow* v. *Brauer*, 175 Va. 118, 122, 123, 7 S. E. 2d 93, 94, 95; *Atlantic Greyhound Corp.* v. *Shelton, Adm'r*, 184 Va. 684, 696, 36 S. E. 2d 625, 630; *Richmond Oil Equipment Co.* v. *W. T. Holt, Inc.*, 189 Va. 334, 339, 53 S. E. 2d 11, 13; *Liberty Mut. Ins. Co.* v. *Tiller*, 189 Va. 544, 548, 53 S. E. 2d 814, 816.

Instruction "I" was granted over the objection of the plaintiffs. This instruction told the jury that in considering the evidence they might take into consideration the tables of speed and stopping distances of motor vehicles found in Code, § 46.1-195 [Repl. Vol. 1958]. In the language of the statute the instruction told the jury that these tables "are the result of experiments made with motor vehicles, unloaded except for the driver, equipped with four-wheel brakes, in good condition."

The plaintiffs argue here, as they did in the court below, that this instruction was without evidence to support it; that there was no evidence at which point south of the point of impact the defendant applied her brakes, nor was there any evidence that the brake equipment on the defendant's car was the same as that upon which the statute recited that the experiments fixing stopping distances were based. We agree with this position of the plaintiffs.

In *Beasley* v. *Bosschermuller*, 206 Va. 360, 366, 143 S. E. 2d 881, 886, we held that the granting of a similar instruction, while not justified by the evidence, was harmless error. The same is true here. Such an instruction should not be given at the retrial of this case.

Complaint is also made by the plaintiffs of the granting of Instructions "D" and "G" and the failure to grant Instruction No. 6. It is unnecessary that these instructions be detailed. Suffice it to say that upon careful consideration we find no error in the trial court's rulings with respect to any of them.

Because of the error of the trial court in granting Instructions "B", "H", "F" and "J", the judgments are reversed, the verdicts set aside, and the cases remanded for a new trial in accordance with the principles here expressed.                    *Reversed and remanded.*