### Richmond

KENNETH LEE JOHNSON

v.

BRANDON I. HAAS, ETC.

October 15, 1982.

Record No. 801819.

Present: All the Justices.

*(J. Barbour Rixey; John F. Rixey; Rixey, Heilig & McKenry,* on brief), for appellant.
*(John W. Drescher; Jonathan L. Hauser; Pickett, Spain & Lyle,* on brief), for appellee.
Case submitted on briefs.

PER CURIAM.

Brandon I. Haas, who sued by and through her mother and next friend, Candace W. Haas, brought this action for damages against Kenneth Lee Johnson for personal injuries received in an automobile accident resulting from Johnson's allegedly negligent operation of his vehicle.[1] Following a two-day trial, the jury returned a verdict for Haas, and the court entered final judgment thereon.

The sole question presented by this appeal is whether the trial court erred in granting Instruction No. 17, dealing with the tables of speed and stopping distances found in Code § 46.1-195.

The accident occurred in Virginia Beach, on June 11, 1978, at 10:00 a.m. on Virginia Beach Boulevard near its intersection with Shipp Lane. The weather was clear, and the street was dry. Virginia Beach Boulevard, at this point, is a level, three-lane asphalt highway. The eastbound lane is separated by a double yellow line from the two westbound lanes which, in turn, are divided by a

---

[1] The motion for judgment was originally filed against Johnson and a co-defendant, Humor H. Roulhac. Prior to trial, on July 10, 1980, in consideration of a settlement of $20,000, Haas executed a covenant not to sue in favor of Roulhac.

single broken white line. The speed limit for the Boulevard is 45 m.p.h. Shipp Lane enters the Boulevard from a southerly direction.

Candace Haas testified that she and her daughter were on their way home, traveling in an easterly direction on Virginia Beach Boulevard in her Volkswagen automobile when the accident happened. She remembered stopping at the traffic light at the intersection with Oceana Boulevard with one automobile in front of her. Her next recollection after that traffic light was waking up in the hospital emergency room. She could not recall the collision.

The evidence disclosed that the Johnson vehicle, a brown Maverick, was westbound in the passing lane, that it swerved to avoid another car slowly crossing the Boulevard from south to north and, losing control, crossed the double yellow line into the path of the Haas Volkswagen.

The investigating police officer, Lester A. Silva, arrived upon the scene within five minutes after the collision. He testified that the Haas automobile had sustained heavy damage to the front and was sitting in the intersection of Shipp Lane and the eastbound traffic lane of Virginia Beach Boulevard. The Volkswagen had not left any skid marks. The Maverick came to rest approximately 30 feet away, facing south with its front in the eastbound lane. The officer explained that the distance between the two automobiles was caused by the force of the impact.

The skid marks leading up to the Maverick measured 119 feet. Of these, approximately 80 feet were straight down the westbound passing lane; 39 feet bore to the left and led into the eastbound lane where the accident happened. Silva described the skid marks as "solid black" and concluded that this type was caused by Johnson's constant application of the Maverick's four-wheel brakes.

Photographs depicting the traffic intersection where the crash took place, taken several weeks after the accident and introduced into evidence, appear to reveal the presence of certain loose gravel on the highway.

Over Johnson's objection, the trial court granted Instruction No. 17, which read in part:

> The following tables of speed and stopping distances, which raise no presumptions, show the results of experiments made with automobiles, unloaded except for the driver, equipped with four-wheel brakes, in good condition, on dry,

hard, approximately level stretch of highway, free from loose material; [Then followed the statutory tables of speed and stopping distances.]

None of the witnesses testified to excessive speed on Johnson's part. Hence, Instruction No. 17 permitted the jury to infer excessive speed from the tables of speed and stopping distances.

■ Under Code § 46.1-195(b), it is recognized that the experiments upon which the statistical tables of speed and stopping distances are based were conducted under certain stated conditions. These include a motor vehicle (1) unloaded except for the driver, (2) equipped with four-wheel brakes, (3) in good condition, and (4) traveling on dry, hard, approximately level stretches of highway free from loose material.

In *Bunn, Executrix v. N. F. & D. Ry. Co.,* 217 Va. 45, 51, 225 S.E.2d 375, 379 (1976), we held:

We have repeatedly discouraged the granting of an instruction on the tables of speed and stopping distances *unless it is clearly supported by the evidence. See Terry v. Fagan,* 209 Va. 642, 166 S.E.2d 254 (1969); *White v. Hunt,* 209 Va. 11, 161 S.E.2d 809 (1968); *Cook v. Basnight,* 207 Va. 491, 151 S.E.2d 408 (1966); *Shelton v. Mullins,* 207 Va. 17, 147 S.E.2d 754 (1966); *Beasley v. Bosschermuller,* 206 Va. 360, 143 S.E.2d 881 (1965). [Emphasis supplied.]

In *Bunn,* a wrongful death action growing out of a collision between an automobile and a train, we concluded that the record was devoid of any evidence of certain factors enunciated in the statute: condition of the brakes and dry pavement, free from loose material. For that reason, we held the instruction unwarranted by the evidence. Nevertheless, we did not set aside the jury verdict because the other evidence clearly exonerated the defendant and established the negligence of the plaintiff as the sole cause of the accident.

■ With this in mind, we must carefully appraise the evidence presented at trial in the case at bar to see if the requisite foundation called for by Code § 46-1-195(b) was established.

The evidence reveals that the Maverick automobile operated by Johnson was unloaded except for the driver and that it was equipped with four-wheel brakes. Also, that portion of Virginia Beach Boulevard where the accident took place is approximately

level and on the day in question was both hard and dry. As to the remaining two circumstances required for the proper foundation, a highway free from loose material and brakes in good condition, the record is silent.

Haas argues that the testimony and exhibits presented below adequately established that Virginia Beach Boulevard was free from loose material on that Sunday morning. She points out that on cross-examination Johnson replied in the negative to a question as to whether there were any problems with the highway. Also, Johnson stated that Exhibit No. 3, one of the three photographs of the intersection of Shipp Lane and Virginia Beach Boulevard, taken sometime after the accident, essentially depicted his view of the scene on July 11, 1978.

The only other witnesses to elaborate on the condition of Virginia Beach Boulevard were Candace Haas and Douglas Plude, the driver of the car just ahead of Mrs. Haas. It is true that Haas stated that there were no defects in the highway, but she was referring to the intersection of Oceana Boulevard and Virginia Beach Boulevard, her last recollection that morning before the emergency room. Likewise, in his testimony, Plude declared the highway to be good at that same intersection. The road conditions at one intersection cannot, however, be equated with those at another. In short, there was no evidence that the intersection of Virginia Beach Boulevard and Shipp Lane was free from loose material.

As to the brakes on the Maverick, the record is devoid of any reference to their condition. Officer Silva did describe the solid black tire skid marks left by the Maverick. But neither he nor any other witness alluded to whether the brakes were in good condition.

We hold that the granting of Instruction No. 17 was not justified by the evidence. Proof of *each* of the factors enunciated in Code § 46.1-195(b) is required as a foundation before any instruction based on tables of speed and stopping distances can be presented to the jury.

The judgment of the trial court is reversed, the verdict of the jury is set aside, and the case is remanded for a new trial.

*Reversed and remanded.*