**UNPUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

SHALLAND JONES,

*Plaintiff-Appellant,*

v.

PETER FINIS GRIFFEY; D&M
CARRIERS, LLC,

*Defendants-Appellees.*

No. 03-1632

Appeal from the United States District Court
for the Eastern District of Virginia, at Norfolk.
Jerome B. Friedman, District Judge.
(CA-02-890-2)

Argued: June 2, 2004

Decided: July 6, 2004

Before WILKINSON, SHEDD, and DUNCAN, Circuit Judges.

Affirmed by unpublished per curiam opinion.

## COUNSEL

**ARGUED:** Philip John Geib, Virginia Beach, Virginia, for Appellant.
Bryan Karl Meals, MCGUIREWOODS, L.L.P., Norfolk, Virginia, for
Appellees. **ON BRIEF:** Robert W. McFarland, MCGUIREWOODS,
L.L.P., Norfolk, Virginia; William H. Baxter, II, MCGUIREWOODS,
L.L.P., Richmond, Virginia, for Appellees.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

---

**OPINION**

PER CURIAM:

In this diversity case, Shalland Jones sued Peter Griffey for injuries that occurred when their respective vehicles collided as Mr. Griffey was turning left off of Berry Hill Road in Smithfield, Virginia. Following trial, the jury found in favor of Mr. Griffey. Ms. Jones timely appealed. For the reasons that follow, we affirm.

I.

On December 3, 1999, Ms. Jones left work at the Gwaltney Packing Plant in Smithfield. She was driving a 1995 Mercury Tracer and was accompanied by Tracy Bradshaw, her sister. Mr. Griffey was driving a tractor trailer to the Gwaltney Plant on Berry Hill Road on behalf of his employer, D&M Carriers.

Although many of the facts surrounding the accident are unclear, it is undisputed that Ms. Jones and Mr. Griffey were traveling in opposite directions on the two lanes of Berry Hill Road and that Mr. Griffey had to turn left, across Ms. Jones's lane, to enter the Gwaltney Plant. The accident occurred at this juncture.

Accounts of the accident itself diverge markedly. Ms. Jones testified that as she proceeded down Berry Hill Road, she looked at her speedometer to make sure that she was not speeding. She expressed uncertainty as to how far away Mr. Griffey's vehicle was when she first saw it, but stated that when she saw him turn left, she swerved to the right in an unsuccessful attempt to avoid impact. Ms. Jones further testified that she attempted to brake.

Mr. Griffey testified that he had stopped when the accident occurred. He stated that in preparing to turn left into the Gwaltney Plant, he had just crossed the center median when he stopped to allow

a delivery truck coming out of the plant to exit and turn left. He stated that he did not see Ms. Jones until the delivery truck had completed its turn and proceeded in the direction from which Ms. Jones was coming. Mr. Griffey testified that he had not started moving again when Ms. Jones collided with the left front fender of his truck. Mr. Griffey did not see Ms. Jones make any evasive maneuvers to avoid impact, and further testified that she appeared to be speeding.

Ms. Bradshaw testified that she also worked at the Gwaltney Plant, and was riding home with Ms. Jones on the day of the accident. According to Ms. Bradshaw, she was not paying attention to the speed of the vehicle. Ms. Bradshaw stated that she was not conversing with Ms. Jones; she was reading a sports magazine and noticed nothing that happened before the collision. She further testified that the vehicle did not slow down prior to impact, but maintained the same rate of speed "the whole time." J.A. 211.

The most detailed testimony about the accident was provided by Richard A. Guillory, who worked at the Gwaltney Plant as a Security Officer at the time of the accident. Mr. Guillory saw Mr. Griffey driving slowly along Berry Hill Road, looking as though he might be lost. Mr. Guillory testified that Mr. Griffey was starting to turn into the Plant when he collided with Ms. Jones. According to Mr. Guillory, Ms. Jones's head was moving from side to side as though she was engaged in conversation. He estimated Ms. Jones's speed to be approximately 45 miles per hour in a 35 mile per hour zone, and stated that she swerved to the right in an unsuccessful attempt to avoid Mr. Griffey. Mr. Guillory further testified that he did not hear the application of brakes by either vehicle.

Officer Mark Whitefleet of the Smithfield Police, who was summoned to the scene following the accident, testified regarding the debris near the edge of Ms. Jones's lane of travel, which suggested she had tried to move to the right to avoid the collision. Officer Whitefleet saw no evidence of skidding. He further testified, contrary to Mr. Griffey's assertion that he had merely crossed the median, that the actual point of impact would have placed the cab of his truck fully in Ms. Jones's lane.

## II.

After the close of evidence at trial, the district court entertained motions on jury instructions. Over objection by Ms. Jones, the court granted Mr. Griffey's request to give Instruction No. 10.105 of the Virginia Model Jury Instructions. The instruction is taken from § 46.2-880 of the Code of Virginia,[1] and consists of a table reflecting average stopping distances under certain circumstances.[2]

During the course of deliberations, the jury communicated three requests to the district court: it asked to see a jury instruction, the stopping distance chart, and some missing pictures. Ms. Jones renewed her objection to the giving of Jury Instruction 10.105. The district court called the jury back to respond to the note and to inquire about the jury instruction sought. One request was for Jury Instruction

---

[1]Prior to 1989, the statutory table of stopping distances was found at Va. Code § 46.1-195(b). Approximately one month before the trial in this case, the legislature amended § 46.2-880 to note in part that "the above table has been constructed, using scientific reasoning, to provide fact-finders with an average baseline for motor vehicle stopping distances: (1) for a vehicle in good condition and (2) on a level, dry stretch of highway, free from loose material." *Id.*

[2]As given by the district court, the instruction stated:

> The following are the results of experiments made with vehicles, unloaded except for the driver, equipped with four-wheel brakes, in good condition, on dry, hard, approximately level stretches of highway free from loose material:
>
> The results of these experiments are not conclusive, but you may consider them if you believe that the conditions of the experiments have been proven.
>
> . . .
>
> The figures representing the stopping distance for cars and trucks are not precise, and may not be accurate in this case. You may consider the figures a frame of reference for other evidence introduced in this case, but you may not *assume* that the figures are reflective of the action of either driver. That must only be determined in the light of all of the evidence in the case.

J.A. 349 (table of speeds and stopping distances omitted).

10.105. In response, the district court repeated the numbers in the stopping distances chart. In response to another question, the district court also reviewed the instructions regarding negligence and contributory negligence.

On May 6, 2003, the jury returned a verdict in favor of Mr. Griffey. This appeal followed.

### III.

Ms. Jones's sole claim on appeal is that the district court erred by giving Jury Instruction No. 10.105 where the evidence did not support it. This court reviews challenges to jury instructions for abuse of discretion. *Johnson v. MCNA Am. Bank, NA*, 357 F.3d 426 (4th Cir. 2004). In a diversity case, state law determines the substance of the jury instructions, but federal law governs the manner in which the instructions are given and whether any error in the instructions is prejudicial. *See Hardin v. Ski Venture, Inc.*, 50 F.3d 1291, 1293 (4th Cir. 1995). Hence, even if the challenged instruction is erroneous under state law, this court will not reverse unless the error seriously prejudiced the challenging party's case. *Johnson*, 357 F.3d at 432.

The Virginia courts have long been critical of the stopping distances instruction that Mr. Griffey advanced at trial. *See Shelton v. Mullins*, 147 S.E.2d 754, 758 (Va. 1966) (finding error, albeit harmless, in the giving of the instruction in a case in which the evidence did not support it); *Beasley v. Bosschermuller*, 143 S.E.2d 881, 886-87 (Va. 1965) (same). As noted by the Virginia Supreme Court, "these tables create no presumption in law," and where there is an inadequate foundation to support an instruction containing these tables, "their presence before the jury inject[s] an element in the case which was not warranted by the evidence." *Bunn v. Norfolk, Franklin & Danville Ry. Co., Inc.*, 225 S.E.2d 375, 379 (Va. 1976) (internal quotations omitted). Consequently, the Virginia Supreme Court "ha[s] repeatedly discouraged the granting of an instruction on the tables of speed and stopping distances unless it is clearly supported by the evidence." *Id.*

Here, there is no doubt that the evidence did not support Jury Instruction No. 10.105. As the Supreme Court of Virginia has stated

> Under Code § [46.2-880], it is recognized that the experiments upon which the statistical tables of speed and stopping distances are based were conducted under certain stated conditions. These include a motor vehicle (1) unloaded except for the driver, (2) equipped with four-wheel brakes, (3) in good condition, and (4) traveling on dry, hard, approximately level stretches of highway free from loose material.

*Johnson v. Haas*, 295 S.E.2d 789, 790 (Va. 1982). The Court in *Haas* held that proof of *each* of the factors enunciated in Code § 46.2-880 is required as a foundation before any instruction based on tables of speed and stopping distances can be presented to the jury. *Id.* The Court went on to find reversible error in the granting of the instruction where it was not justified by the evidence. *Id.*

Mr. Griffey's argument that the testimony adduced at trial presented an adequate foundation for Jury Instruction 10.105 is untenable. It is undisputed that Ms. Jones was not alone in the car. Ms. Jones's testimony that she attempted to apply her brakes does not support an inference that those brakes were in good condition. The photographs in the record indicate the general conditions of the road, but reflect nothing of its moisture level or freedom from loose material. We hold that giving Instruction 10.105 under these circumstances was error. We therefore turn to a determination of whether it was reversible error.[3]

---

[3]Mr. Griffey points out that the district court cautioned the jury on the use of the stopping distances information. In responding to the juror request, the district court stated that

> I do not want this instruction to override your good judgment on all of the other instructions on the law I gave you. This is only one element of the case which you may consider in context with all of the other evidence that has been presented to you.

J.A. 338. This admonition does not cure the error that occurred when the district court gave the stopping distances instruction in the absence of a proper foundation. It does, however, militate in favor of a finding of harmlessness.

IV.

After carefully considering the record, briefs and applicable law, and having had the benefit of oral argument from the parties, we uphold the jury's verdict and decline to remand the matter for a new trial. As noted above, the district court erred in giving Jury Instruction 10.105 in the absence of evidence in the record to support it. However, reversal is not warranted unless the erroneous instruction seriously prejudiced Ms. Jones's case. In essence, if the "verdict actually rendered [at] trial was surely unattributable to the error," *United States v. Brown*, 202 F.3d 691, 699 (4th Cir. 2000) (alteration in original, internal quotation omitted), we will not disturb the jury's verdict.

Here, we find evidence from which the jury could conclude that Ms. Jones was contributorily negligent without relying on the table of stopping distances. In Virginia, "a plaintiff's violation of a statute regulating traffic ordinarily constitutes negligence." *Thomas v. Settle*, 439 S.E.2d 360, 363 (Va. 1994). Although the basis of the jury's verdict is uncertain, as the jury rendered only a general verdict, three witnesses provided testimony from which the jury could infer that Ms. Jones was speeding immediately prior to the accident.[4] While negligence per se will not bar recovery "unless the violation was [also] a proximate or concurring cause that contributed directly to the accident," *id.*, that determination is reserved for the jury. The preponderance of the evidence presented at trial indicates that Ms. Jones attempted to avoid the accident by swerving rather than braking, from which the jury could reasonably infer that Ms. Jones was indeed operating her car at a speed that precluded braking to avoid the accident, and that therefore Ms. Jones's excessive speed was the proximate cause of the accident.[5] In light of evidence from which the jury could have concluded that Ms. Jones was negligent per se, we find her case

---

[4]For her part, Ms. Jones testified only that she had verified that she was driving at the speed limit shortly before the accident, and could not recall her speed at the time Mr. Griffey began his turn.

[5]While not rising to the level of negligence per se, we further note that there is testimony from which the jury could reasonably have found that Ms. Jones failed to maintain a proper lookout, which inhibited her ability to avoid the collision.

was not seriously prejudiced by the erroneous instruction regarding stopping distances.

## V.

For the foregoing reasons, the judgement appealed from is

*AFFIRMED.*