COURT OF APPEALS OF VIRGINIA

Present: Chief Judge Decker, Judge Chaney and Senior Judge Humphreys

UNPUBLISHED

ENRICO ANDRE MOSS

                                                MEMORANDUM OPINION* BY
v.        Record No. 1559-23-2         CHIEF JUDGE MARLA GRAFF DECKER
                                                DECEMBER 30, 2024

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF APPOMATTOX COUNTY
S. Anderson Nelson, Judge

(M. Paul Valois; James River Legal Associates, on brief), for
appellant. Appellant submitting on brief.

(Jason S. Miyares, Attorney General; Virginia B. Theisen, Senior
Assistant Attorney General, on brief), for appellee.


Enrico Andre Moss appeals his jury-trial convictions of first-degree murder; abduction to

extort money; conspiracy to commit abduction to extort money; arson; conspiracy to commit

arson; concealment of a dead body; conspiracy to conceal a dead body; and destruction of

property valued at more than $1,000, in violation of Code §§ 18.2-22, -32, -48, -81, -137,

and -323.02. He contests the sufficiency of the evidence to support the first three convictions

based on what he suggests was a reasonable hypothesis of his innocence. We hold that Moss

waived his right to assert this claim because he failed to present it to the trial court. He further

challenges all of the convictions based on his contention that the testimony of the

Commonwealth's "only fact witness" was "inherently incredible." We conclude that the

---

* This opinion is not designated for publication. See Code § 17.1-413(A).

evidence, viewed under the proper standard, does not support his claim of inherent incredibility as a matter of law. Consequently, we affirm the trial court's judgment.[1]

BACKGROUND[2]

During the fall of 2020, Artenna Horsley-Robey was engaged in a sexual relationship with her godfather, Carlos Rose, which began as sexual abuse when she was a preteen. Moss, characterized by Horsley-Robey as her boyfriend and the father of one of her children, eventually learned of the relationship and became jealous and angry. He instructed Horsley-Robey to text him her location whenever she met with Rose.

On the evening of October 20, 2020, Horsley-Robey texted Moss that she was with Rose and provided their location. Moss arrived there with two other men, Mik'Tavis Green and Keyanta Robinson. At Moss's direction, Horsley-Robey took Moss's keys and went to his car while Moss, Green, and Robinson stayed at Rose's car. Moss returned to his own car a few minutes later. As Robinson drove Rose's car away, Horsley-Robey and Moss followed.

Based on instructions from Moss, Rose called his wife and told her and her daughter to leave their house. A short time later, Rose's wife received a call from his cell phone, from a person whose voice she did not recognize, instructing her to pick up Rose from a particular location. She and her daughter arrived at the location, but Rose was not there. Rose's wife called his cell phone

---

[1] Having examined the briefs and record in this case, the panel unanimously holds that oral argument is unnecessary for two reasons. First, "the appeal is wholly without merit." *See* Code § 17.1-403(ii)(a); Rule 5A:27(a). Second, "the dispositive issue or issues have been authoritatively decided," and "the appellant has not argued that the case law should be overturned, extended, modified, or reversed." *See* Code § 17.1-403(ii)(b); Rule 5A:27(b).

[2] On appeal, we review the evidence "in the 'light most favorable' to the Commonwealth, the prevailing party in the trial court." *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022) (quoting *Commonwealth v. Cady*, 300 Va. 325, 329 (2021)). Doing so requires that we "discard" the defendant's evidence when it conflicts with the Commonwealth's evidence, "regard as true all the credible evidence favorable to the Commonwealth," and read "all fair inferences" in the Commonwealth's favor. *Cady*, 300 Va. at 329 (quoting *Commonwealth v. Perkins*, 295 Va. 323, 324 (2018)).

repeatedly. Eventually, she "got a [man's] voice." The man directed her twice to tell him "where . . . the money [was]." Rose's wife told him she did not "know [any]thing about [any] money." The man on the phone then instructed her not to call Rose's number again and hung up. Rose's wife, who knew her husband sold marijuana and had large quantities of cash in their house at times, believed he had been abducted. She did not contact the police because she was "scared" and was trying to protect their daughter.

Meanwhile, Horsley-Robey and Moss continued to follow Rose's car until it pulled over. Green and Robinson ran to Moss's vehicle and got in. They explained that they had shot Rose when he reached for a gun. Moss replied that "they had to do what they had to do." Robinson drove Rose's vehicle away while Horsley-Robey, Moss, and Green followed in Moss's car.

The group stopped at another location to pick up two containers of gasoline. Moss then drove Robinson in Rose's car, with Horsley-Robey and Green following on Moss's instructions, to a state park in Appomattox. At the park, Moss retrieved the gasoline containers from his car while Horsley-Robey got in the back seat and put her head down. After she heard a "loud boom," she saw that Rose's car was on fire. Moss and Robinson ran back to Moss's car, and Moss drove the group out of the park.

Virginia State Police troopers were dispatched to the location of the fire, where they found Rose's burned body and car. Crime scene analysts located multiple "strike point[s]" consistent with bullet holes inside the burned car. The medical examiner determined that Rose had been killed by gunshot wounds to his head and chest.

Both Horsley-Robey and Moss were eventually arrested based on the ensuing police investigation into Rose's death. Horsley-Robey ultimately cooperated with police and testified at Moss's trial about the circumstances of Rose's death. Police also obtained Moss's cell phone and his vehicle's GPS records. The data confirmed the phone calls and texts between the criminal

- 3 -

actors, as well as with Rose's wife. That data also showed that Moss's cell phone was near the state park in Appomattox at the time of the fire.

At the conclusion of the case, Moss made a motion to strike the evidence. While acknowledging that "a murder happened," Moss's counsel argued that "[t]he only evidence that would go to the jury as to why or how or who comes from a witness who has been impeached." The trial court denied the motion. Following the jury's guilty verdicts, the court sentenced Moss to 125 years' imprisonment, with 65 years suspended.

ANALYSIS

Moss challenges the sufficiency of the evidence to support his convictions. He makes two arguments. First, he suggests that the Commonwealth failed to prove three of the offenses—abduction, conspiracy to commit abduction, and first-degree murder—because the evidence supported a "reasonable hypothesis of innocence." Second, Moss contends that Horsley-Robey's testimony was inherently incredible with regard to all of the offenses.

The standard of review is well established and guides our analysis. "When an appellate court reviews the sufficiency of the evidence underlying a criminal conviction, its role is a limited one." *Commonwealth v. Garrick*, 303 Va. 176, 182 (2024). "The judgment of the trial court is presumed correct and will not be disturbed unless it is 'plainly wrong or without evidence to support it.'" *Pijor v. Commonwealth*, 294 Va. 502, 512 (2017) (quoting Code § 8.01-680). As a result, "it is not for this [C]ourt to say that the evidence does or does not establish [the defendant's] guilt beyond a reasonable doubt because as an original proposition it might have reached a different conclusion." *Commonwealth v. Barney*, 302 Va. 84, 97 (2023) (alterations in original) (quoting *Cobb v. Commonwealth*, 152 Va. 941, 953 (1929)). The only relevant question for the appellate court "is, after reviewing the evidence in the light most favorable to the prosecution, whether any rational trier of fact could have found the essential

- 4 -

elements of the crime beyond a reasonable doubt." *Id.* (quoting *Sullivan v. Commonwealth*, 280 Va. 672, 676 (2010)). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" *McGowan v. Commonwealth*, 72 Va. App. 513, 521 (2020) (quoting *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018)).

## I. Reasonable Hypothesis of Innocence

In his first two assignments of error, Moss argues that the trial court erred in convicting him of abduction and felony murder because the evidence was "consistent with the reasonable theory" that no abduction occurred. He suggests that abduction requires proof of force or threat and that Rose instead was merely *tricked* into leaving to conduct a drug transaction. In his third assignment of error, Moss challenges the sufficiency of the evidence to prove the related inchoate offense, conspiracy to abduct Rose. He suggests that the evidence did not prove an agreement or shared intent to abduct, again based on the theory that Rose was merely tricked.

A bedrock rule of Virginia appellate practice is applicable here. "No ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable th[e] Court [of Appeals] to attain the ends of justice." Rule 5A:18. Moss acknowledges that he failed to preserve his first three assignments of error as required by the contemporaneous objection rule but asks this Court to apply the rule's very narrow ends-of-justice exception.

Under the ends-of-justice exception, an appellant "must affirmatively show that a miscarriage of justice has occurred, not that a miscarriage *might* have occurred." *Conley v. Commonwealth*, 74 Va. App. 658, 683 (2022) (quoting *Holt v. Commonwealth*, 66 Va. App. 199, 210 (2016) (en banc)); *see also Commonwealth v. Bass*, 292 Va. 19, 27 (2016) (framing the test as requiring consideration of "whether there is error" as the appellant contends and "whether the

failure to apply the [exception] would result in a grave injustice" (quoting *Gheorghiu v. Commonwealth*, 280 Va. 678, 689 (2010))). To show a miscarriage of justice, "the appellant must demonstrate that he or she was convicted for conduct that was not a criminal offense or the record must *affirmatively* prove that an element of the offense did not occur." *Holt*, 66 Va. App. at 210 (emphasis added) (quoting *Redman v. Commonwealth*, 25 Va. App. 215, 222 (1997)). Before applying the ends-of-justice exception, therefore, we must "determine whether the record contains affirmative evidence of innocence or lack of a criminal offense." *Id.* (quoting *Flanagan v. Commonwealth*, 58 Va. App. 681, 695 (2011)).

Here, the record does not contain affirmative evidence of innocence or lack of criminal offenses. Moss's first three assignments of error rest on the contention that the evidence established Rose was tricked, without force or threat, into leaving with Moss and the others to conduct a drug transaction. It suggests, as a result, that the evidence was insufficient to establish abduction or intent to abduct. A conviction for the offense of abduction requires proof of the seizing, taking, transporting, detaining, or secreting of another person with the intent to deprive him of his personal liberty. Code § 18.2-47.[3] Significantly, the asportation or detention may be accomplished not only by force or intimidation but also by deception. *See id.* The Supreme Court of Virginia applied this principle in *Jerman v. Director of the Department of Corrections*, 267 Va. 432 (2004). In *Jerman*, the Court held that an abduction occurred where the evidence proved that one of the defendant's confederates convinced the victim to come with her under the ruse of selling illegal narcotics to her and the defendant when their true intent was to harm the victim. *Id.* at 439 (citing *Scott v. Commonwealth*, 228 Va. 519, 526 (1984)). Here, the premise of Moss's assignments of error amounts to a *concession* that the evidence supports a finding that Rose was tricked into leaving with

---

[3] Moss was convicted of a species of abduction in violation of Code § 18.2-48, which includes as an additional element that the abduction was committed "with the intent to extort money or pecuniary benefit." That element is not contested on appeal.

him, as in *Jerman*. Moss simply believes that deception—trickery—is not enough. The case law, however, makes clear that trick or pretense is in fact sufficient to prove abduction. Consequently, the factual concession establishes that Moss's first three assignments of error must be rejected.[4]

As a result, Moss's arguments are insufficient to invoke the ends-of-justice exception of Rule 5A:18. We therefore hold that his first three assignments of error are waived.

## II. Horsley-Robey's Testimony

In his fourth and final assignment of error, Moss argues that Horsley-Robey's testimony was "inherently incredible."[5] He alleges that she made "multiple prior inconsistent statements" and was motivated "to help herself avoid a long prison sentence." A challenge of this nature presents a high hurdle on appeal.

"The sole responsibility to determine the credibility of witnesses, the weight to be given to their testimony, and the inferences to be drawn from proven facts lies with the fact finder." *Blankenship v. Commonwealth*, 71 Va. App. 608, 619 (2020) (quoting *Ragland v. Commonwealth*, 67 Va. App. 519, 529-30 (2017)); *see Gerald v. Commonwealth*, 295 Va. 469, 486 (2018). A reviewing court "must accept 'the [fact finder]'s determination of the credibility

---

[4] We note that although Rose's wife acknowledged in her testimony that Rose was a known marijuana dealer, nothing in the record supports a finding that he ever engaged in a drug deal with Moss. Rose's wife testified that she received a call from Rose's cell phone in which an unknown person demanded money. No evidence in the record indicated that this money was for a marijuana deal. The record also contains no evidence that Rose left with Moss voluntarily and consequently does not provide "*affirmative* evidence of innocence or lack of a criminal offense" with regard to the challenged convictions. *See Holt*, 66 Va. App. at 210 (emphasis added) (quoting *Flanagan*, 58 Va. App. at 695).

[5] The Commonwealth suggests that Moss also did not preserve this assignment of error for appeal. We assume without deciding that the issue was preserved. *See McGinnis v. Commonwealth*, 296 Va. 489, 501 (2018) (holding that an appellate court may assume without deciding an issue is preserved and reach the merits if this approach allows the court "to resolve the appeal on the best and narrowest ground[]"). *See generally Ray v. Commonwealth*, 74 Va. App. 291, 306-07 (2022) (holding that arguing that a witness's "testimony [was] impeached is not the same as arguing that the testimony was inherently incredible as a matter of law" and, consequently, that an inherent-incredibility argument was not preserved for appeal).

of witness testimony unless, "as a matter of law, the testimony is inherently incredible."'" *Hammer v. Commonwealth*, 74 Va. App. 225, 239 (2022) (quoting *Lambert v. Commonwealth*, 70 Va. App. 740, 759 (2019)).

"Evidence is not 'incredible' unless it is 'so manifestly false that reasonable men ought not to believe it' or [it is] 'shown to be false by objects or things as to the existence and meaning of which reasonable men should not differ.'" *Gerald*, 295 Va. at 487 (quoting *Juniper v. Commonwealth*, 271 Va. 362, 415 (2006)). "A legal determination that a witness is inherently incredible is very different from the mere identification of inconsistencies in a witness' testimony or statements." *Kelley v. Commonwealth*, 69 Va. App. 617, 626 (2019). "Testimony may be contradictory or contain inconsistencies without rising to the level of being inherently incredible as a matter of law." *Id.* Further, "[t]he mere fact that a witness may have delayed in reporting knowledge of a case or given inconsistent statements during the investigation of a crime does not necessarily render the testimony unworthy of belief." *Juniper*, 271 Va. at 415. Rather, such circumstances are "appropriately weighed as part of the entire issue of witness credibility, which is left to the jury to determine." *Id.* "Consequently, as Virginia law dictates, '[p]otential inconsistencies in testimony are resolved by the fact finder,' not the appellate court." *Kelley*, 69 Va. App. at 626 (alteration in original) (quoting *Towler v. Commonwealth*, 59 Va. App. 284, 292 (2011)).

Although Horsley-Robey admitted during her testimony that she had initially lied to the police about her knowledge of the events, this fact does not render her testimony incredible. *See Juniper*, 271 Va. at 415. Moreover, Horsley-Robey specifically stated that no promises were made to her in exchange for her testifying, and her testimony was corroborated by Moss's cell phone and car GPS records. In any event, the jury was instructed that its duties included assessing the credibility of the witness. *Id.* Horsley-Robey's potential motives for testifying

were "appropriately weighed as part of the entire issue of witness credibility, which [wa]s left to the jury to determine." *Id.* (citing *Shelton v. Mullins*, 207 Va. 17, 22 (1966)).  Based on well-established legal principles, we reject Moss's argument that Horsley-Robey's testimony was inherently incredible and decline to disturb the jury's verdict.

CONCLUSION

For the foregoing reasons, we hold that Moss failed to preserve for appeal his contention that the evidence supported a finding that Rose accompanied Green and Richardson to engage in a drug transaction.  Accordingly, we do not consider this challenge to the sufficiency of the evidence to prove abduction, conspiracy to commit abduction, and felony murder.  We further reject his suggestion that Horsley-Robey's testimony was inherently incredible as a matter of law.  Moss's convictions are therefore affirmed.

*Affirmed.*